IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT, IN AND
FOR CHARLOTTE COUNTY, FLORIDA

RYAN AND DEANNA DUNLAP,

      Plaintiffs,

v.                              CASE NO.:

CLEAR BLUE SPECIALTY INSURANCE
COMPANY,

      Defendant.

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiffs, RYAN AND DEANNA DUNLAP, by and through the undersigned attorneys, sue the Defendant, CLEAR BLUE SPECIALTY INSURANCE COMPANY, and allege as follows:

1.      This is an action for declaratory relief and breach of contract with damages greater than Fifty Thousand Dollars ($50,000.00), exclusive of interest, costs, and attorney's fees.

2.      At all material times hereto, the Plaintiffs, RYAN AND DEANNA DUNLAP, (hereinafter "Plaintiffs") were and are Florida homeowners.

3.      At all material times hereto, Defendant, CLEAR BLUE SPECIALTY INSURANCE COMPANY, (hereinafter "Defendant") was a corporation duly licensed to transact insurance business in the State of Florida.  Defendant does business, has offices, and/or maintained agents for the transaction of its customary business in Charlotte County, Florida.

4.      Plaintiffs bring this action as property owners. Attached hereto and incorporated herein as Plaintiffs' Exhibit "A" is a copy of the estimate for the work to be performed.

5.      Prior to September 28, 2022, the Plaintiffs sought and purchased property insurance from Defendant to cover their property located at 16 Palm Drive, Placida, Florida 33946

(hereinafter "Plaintiffs' Property"). Said policy of insurance, which is believed to be policy number AL91-006712-00 with corresponding claim number SWYCSHO00471 (hereinafter "Plaintiffs' Policy"), was issued by Defendant to Plaintiffs to provide insurance coverage which included, but was not limited to, coverage afforded to protect Plaintiffs' Property against hurricane damage.

6.      Plaintiffs' Policy was issued by Defendant in Charlotte County, Florida and was in full force and effect as of September 28, 2022. Attached hereto and incorporated herein as Plaintiffs' Exhibit "B" is a copy of Plaintiffs' Policy.

7.      On or about September 28, 2022, Plaintiffs' Property located at 16 Palm Drive, Placida, Florida 33946 was damaged by Hurricane Ian (hereinafter, the "Loss"). The Loss was covered under Plaintiffs' Policy issued by Defendant.

8.      As of the date of the filing of this lawsuit, Defendant has failed to: (i) acknowledge coverage for the Loss; and/or (ii) acknowledge that payment of insurance proceeds for the Loss will be forthcoming; and/or (iii) issue payment in full of insurance proceeds for the Loss to Plaintiffs.

9.      Jurisdiction and venue of this matter are proper in the Circuit Court for Charlotte County, Florida.

### COUNT I-BREACH OF CONTRACT AGAINST DEFENDANT

10.      Plaintiffs do hereby repeat and re-allege Paragraphs 1 through 9 above and incorporate the same by reference herein.

11.      Plaintiffs are named Insured under the Plaintiffs' Policy and said policy was in full force and effect as to the Plaintiffs at all times material to this Complaint, including when Plaintiffs' Property was damaged as described above.

12.    Plaintiffs have either complied with all conditions precedent to filing this lawsuit and Plaintiffs are entitled to recover under Plaintiffs' Policy or any such conditions have been waived.

13.    Defendant's refusal to: (i) acknowledge coverage for the Loss; and/or (ii) acknowledge that payment of insurance proceeds for the Loss will be forthcoming; and/or (iii) issue payment in full of insurance proceeds for the Loss to Plaintiffs, constitutes a breach of contract.

14.    Plaintiffs have been damaged as a result of Defendant's breach in the form of unpaid insurance proceeds, interest, costs, and attorney's fees.

15.    Plaintiffs have been and remain fully prepared to comply with all of the obligations pursuant to the aforesaid contract of insurance.

16.    As a result of Defendant's aforementioned breach of contract, it has become necessary that Plaintiffs retain the services of the undersigned attorneys pursuant to Fla. Stat. § 627.428 or Fla. Stat. § 626.9373.    Plaintiffs are obligated to pay a reasonable fee for the undersigned attorneys' services in bringing this action, plus necessary costs.

17.    Plaintiffs are entitled to recover attorney's fees and costs pursuant to Fla. Stat. §§ 627.428, 627.70152, and/or Fla. Stat. § 626.9373.

**WHEREFORE**, the Plaintiffs, RYAN AND DEANNA DUNLAP, by and through the undersigned counsel, demand judgment against Defendant, CLEAR BLUE SPECIALTY INSURANCE COMPANY, for all unpaid bills with interest on any overdue payments, costs, attorney fees pursuant to Fla. Stat. §§ 627.428, 627.70152, and/or Fla. Stat. § 626.9373, and for all other remedies the Court sees fit to grant, and the Plaintiffs demand trial by jury.

## COUNT II-DECLARATORY RELIEF AGAINST DEFENDANT

18.    Plaintiffs reallege paragraphs 1 through 9 above and incorporate the same by reference herein.

19.     Under the terms of the subject Plaintiffs' Policy, Defendant insured against direct, physical loss to the Plaintiffs' Property.  There are however a number of exclusions which the Defendant is relying upon to deny coverage for the Loss.

20.     Under the terms and provisions of the Plaintiffs' Policy, Plaintiffs' Loss appears to be covered for the property damage sustained; however, Defendant denied coverage for the Loss and/or asserted in its claim denial letter that certain portions of Plaintiffs' Loss were not covered under the Plaintiffs' Policy due to various policy exclusion(s)/exception(s) (such ambiguous provisions are incorporated herein by reference) and/or did not agree to the pricing.

21.     As a result of Defendant's assertions of applicable policy exclusion(s)/exception(s) and Defendant's apparent belief that the entire and/or a part of the Loss is not covered based upon its interpretation of the Plaintiffs' Policy and/or the pricing issues, Plaintiffs are in doubt as to Plaintiffs' entitlement to coverage under the Plaintiffs' Policy and/or as to the Defendant's denial.

22.     Plaintiffs believe that the Loss is covered and that Plaintiffs' estimate is accurate and compensable; however, Defendant disagrees.  Consequently, the parties can only resolve their differences when coverage is determined by this Court. *See Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.*, 109 So.3d 851, 859 (Fla. 1st DCA 2013) ("To be entitled to a declaratory judgment, one must demonstrate that (1) a good-faith dispute exists between the parties; (2) one presently has a justiciable question concerning the existence or non-existence of a right or status, or some fact on which such right or status may depend; (3) one is in doubt regarding one's right or status, and (4) a bona-fide, actual, present, and practical need for the declaration exists").

23.     Plaintiffs are uncertain as to the existence or non-existence of Plaintiffs' rights to coverage under the Plaintiffs' Policy and have an actual, practical and present need for a declaration by the court as to Plaintiffs' rights under the Plaintiffs' Policy.  Consequently, Plaintiffs seek relief from uncertainty and insecurity with respect to Plaintiffs' rights and legal relations with Defendant under the Plaintiffs' Policy. *See Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5

(Fla. 2004); *Lutz v. Protective Life Ins. Co.*, 951 So.2d 884 (Fla. 4th DCA 2007); *Jossfolk v. United Property & Cas. Ins. Co.*, 110 So.3d 110) (Fla. 4th DCA 2013) (***permitting declaratory judgment in a first party property insurance action***); *Certain Interested Underwriters At Lloyd's London v. Pitu, Inc.*, 95 So.3d 290 (Fla. 3rd DCA 2012) (***permitting both breach of contract and declaratory judgment in a first party property insurance action***) (Emphasis added).

24.     As a direct and proximate result of the foregoing conflicting positions of the parties, there is an actual bona-fide controversy between the parties that requires judicial interpretations as to whether there has been a covered Loss. Accordingly, Plaintiffs seek a declaration as to Plaintiffs' rights relative to coverage of the Loss under the Plaintiffs' Policy and Florida law. *See Security First Insurance Co. v. Phillips*, 45 Fla. L. Weekly D1426 (Fla. 5th DCA, June 12, 2020) ("Because a bona fide controversy existed, declaratory relief was appropriate to determine the factual issues raised [i.e. whether the insurance policy sub judice was in effect at the time of the damage]. The trial court therefore erred in dismissing the complaint. . . .").

25.     The purpose of this declaratory decree action is to obtain a judicial interpretation of the Plaintiffs' Policy, as it relates to the facts involved herein, which will determine that there has been a covered Loss and as to the pricing. Without such a declaratory decree, Plaintiffs are unable to obtain insurance benefits under the Plaintiffs' Policy.

26.     Pursuant to Fla. Stat. § 86.011, this Court has jurisdiction to declare the applicable rights, status, and other equitable or legal relations between the parties as to the existence, or nonexistence of any right; or any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future.

27.     Pursuant to Fla. Stat. § 86.021, Plaintiffs are in doubt as to Plaintiffs' rights and status under the Plaintiffs' Policy. Therefore, Plaintiffs may have this Court determine Plaintiffs'

questions concerning the construction or validity arising under said Policy and Plaintiffs can obtain a declaration of Plaintiffs' rights, status, or legal relations thereunder.

28.     Pursuant to Fla. Stat. § 86.051, this Court is not limited nor restricted from exercising its general declaratory relief powers conferred by Fla. Stat. § 86.01 as related to Plaintiffs' request for declaratory relief in this action.  Additionally, this Court may even render its decision in this matter by way of anticipation with respect to any act not yet done or any event which has not yet happened.

29.     Pursuant to Florida Stat. § 86.101, in response to Plaintiffs' request for declaratory relief, this Court's decision is to be rendered for purposes of settling and affording Plaintiffs relief from its insecurity and uncertainty with respect to Plaintiffs' rights, status and other equitable or legal relations and the declaratory relief statute is to be liberally administered and construed. (Emphasis added). *See also Olive v. Maas*, 811 So.2d 644, 648 (Fla. 2002); *C.A.T., LLC v. Island Developers*, Ltd, 827 So.2d 373,375 (Fla. 3d DCA 2002); *National Rifle Ass'n of America v. City of South Miami*, 812 So.2d 504 (Fla. 3d DCA 2002); *State Farm Fire and Cas. Co. v. Higgins*, 788 So.2d 992, 999 (Fla. 4th DCA 2001); *X Corp. v. Y Person*, 622 So.2d l098 (Fla. 2d DCA 1993).

30.     Plaintiffs' disagreement(s) with Defendant concerning coverage under the Plaintiffs' Policy is a proper subject for a declaratory judgment. *See Transportation Cas. Inc. Co. v. Soil Tech. Distributors, Inc.*, 966 So.2d 8, 9 (Fla. 4th DCA 2007); *Effort Enterprises of Florida, Inc. v. Lexington  Ins. Co.*, 666 So.2d 930, 931 (Fla. 4th DCA 1995); *Tindall v. Allstate Ins. Co.*, 472 So.2d 1291, 1292 (Fla. 2d DCA 1985); *Tavares v. Allstate*, 342 So.2d 551 (Fla. 3d DCA 1977); *Perez v. State Auto. Ins. Ass'n.*, 270 So.2d 377 (Fla. 3d DCA 1972).

31.     Plaintiffs have the right to proceed with its declaratory relief action and such action should not be impermissibly foreclosed. *See People's Trust Ins. Co. v. AlonzoPombo*, 45 Fla. L. Weekly D2110 (Fla. 3d DCA, Sept. 9, 2020) ("Where a complaint for declaratory action meets [the Rhea] requirements, it should not be dismissed for failure to state a cause of action")*;*

*Travelers Ins. Co. v. Emery*, 579 So.2d 798, 801 (Fla. 1st DCA 1991) ("[Q]uestions of fact and disagreements concerning coverage under insurance policies are proper subjects for a declaratory judgment if necessary to a construction of legal rights."); *Effort Enterprises of Florida, Inc. v. Lexington Ins. Co.*, 666 So.2d 930, 932 (Fla. 4th DCA 1995); *Floyd v. Guardian Life Ins. Co. Of America*, 415 So.2d 103, 105 (Fla. 3d DCA 1982).

32.    All conditions precedent to the filing of this action have been complied with, met or otherwise waived.

33.    As a direct and proximate result of Defendant's conduct, Plaintiffs have been obligated to retain undersigned counsel to bring this action and, pursuant to Fla. Stat. §§ 86.011, 626.9373, 627.428, and 57.041, and others, undersigned counsel is entitled to attorneys' fees in this matter to be paid by the Defendant.

**WHEREFORE**, Plaintiffs, RYAN AND DEANNA DUNLAP, pray this Honorable Court takes jurisdiction of this matter and declares the parties' rights and duties under the Plaintiffs' Policy, and takes the following actions, including but not limited to:

a.    entering an order holding that Defendant, CLEAR BLUE SPECIALTY INSURANCE COMPANY, is in breach of the insurance contract pursuant to the terms and conditions of the Plaintiffs' Policy and awarding damages therefrom, thereby also waiving further policy compliance on the part of Plaintiffs;

b.    entering an order holding that since Defendant previously acknowledged to an unagreed amount under the Plaintiffs' Policy relative to the Loss, that conditions precedent are waived and/or provide a declaration regarding the insured's specific requirements, so Plaintiffs can comply with same, without Plaintiffs being in violation of the Plaintiffs' Policy (and abating this action pending such compliance);

c.      entering an order declaring that the Plaintiffs are in compliance with the Plaintiffs' Policy, and have complied with all conditions precedent thereunder or same were waived by the conduct of Defendant;

d.      entering an order declaring that Plaintiffs' Loss is the result of direct, physical loss to the Plaintiffs' Property;

e.      order full disclosure of all documents and allow full and liberal discovery of all facts that may lead to admissible evidence relevant to the determination herein, including but not limited to, production of the complete insurance policy, and a complete copy of the written materials in the possession of the Defendant that would shed light on the issues involved herein;

f.      determine applicable law, including the provisions of Florida Statutes that apply to the policy and to the parties;

g.      declare each policy provision not in conformity with Florida law be amended to comply with Florida law;

h.      declare that any ambiguities in the statute or policy be construed in favor of insurance coverage;

i.      declare that the statutes and policy provisions be construed strictly and most strongly against the insurer, and liberally in favor of the insured, so as to effect the dominant purpose of indemnity or payment to the insured;

j.      declare that the Plaintiffs' Policy provides full coverage for the Loss submitted by the Plaintiffs;

k.      declare that the Plaintiffs are entitled to a claim for attorneys' fees, costs and prejudgment interest against Defendant under Fla. Stat. §§ 86.011, 626.9373, 627.428, and 57.041 and determine amounts thereunder;

l.      determine and declare any other material matters pertaining to the respective rights and responsibilities under the policy, as needed to do complete justice in this case; and

m.    awarding any and all other equitable relief this court deems just and proper, and granting a trial by jury of all issues triable as of a right by a jury.

Plaintiffs, RYAN AND DEANNA DUNLAP, further demand trial by jury of all issues so triable in accordance with Florida Statutes, Chapter 86, as well as for entry of judgment for Plaintiffs as to all issues raised in this declaratory action, and against Defendant, CLEAR BLUE SPECIALTY INSURANCE COMPANY, for insurance proceeds, attorneys' fees, and costs pursuant to Fla. Stat. §§ 86.011, 626.9373, 627.428, 627.70152, and/or Fla. Stat. § 57.041.

## CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that a true and correct copy of this document will be served on the Defendant along with the Summons in this action.

**DATED**: August 23, 2023

/s/ *Ali A. Kadir*
**ALI A. KADIR, ESQ.**
Florida Bar No.: 13582
**KUHN RASLAVICH, P.A.**
986 Douglas Ave., Ste. 102
Altamonte Springs, FL 32714
Telephone: (407) 501-4833
Facsimile: (407) 501-4856
Ali@thekrfirm.com
Counsel for Plaintiffs

## Coastal Claims Services

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

| | | | |
|---|---|---|---|
| Insured: | Ryan & Deanna Dunlap | E-mail: | towallstreet@gmail.com |
| Property: | 16 Palm Dr. | | |
| | Placida, FL 33946 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Mark Hazel | Business: | (772) 538-3233 |
| Business: | 2650 N. Dixie Freeway | | |
| | New Smyrna Beach, FL 32168 | | |

| | | | |
|---|---|---|---|
| Estimator: | Mark Hazel | Business: | (772) 538-3233 |
| Business: | 2650 N. Dixie Freeway | | |
| | New Smyrna Beach, FL 32168 | | |

| | | | |
|---|---|---|---|
| Reference: | | Business: | (386) 314-0074 |
| Company: | Coastal Claims Services, Inc | | |
| Business: | 2650 N. Dixie Freeway | | |
| | New Smyrna Beach, FL 32168 | | |

**Claim Number:** SWYCSHO00471     **Policy Number:** AL91-006712-00     **Type of Loss:** Hurricane

| | | | |
|---|---|---|---|
| Date of Loss: | 9/28/2022 7:37 AM | Date Received: | |
| Date Inspected: | | Date Entered: | 12/12/2022 7:34 AM |

| | |
|---|---|
| Price List: | FLFM8X_DEC22 |
| | Restoration/Service/Remodel |
| Estimate: | DUNLAP_SWYCSHO00471 |



**Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

**DUNLAP_SWYCSHO00471**

**Main Level**

**Main Level**

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| _DWELLING_ | | | | | | | |
| 1.  R&R Central air conditioning system - 3 ton - 16-21 SEER | 1.00  EA | 4,738.06 | 214.36 | 990.50 | 5,942.92 | (0.00) | 5,942.92 |
| 2.  Dumpster load - Approx. 12 yards, 1-3 tons of debris | 1.00  EA | 534.00 | 0.00 | 106.80 | 640.80 | (0.00) | 640.80 |
| 3.  R&R Soffit - wood | 128.00  SF | 6.96 | 20.97 | 182.38 | 1,094.23 | (0.00) | 1,094.23 |
| 4.  Prime & paint exterior soffit - wood | 0.00  SF | 2.67 | 0.00 | 0.00 | 0.00 | (0.00) | 0.00 |
| 7.  Finish Carpentry - General Laborer - per hour | 6.00  HR | 52.50 | 0.00 | 63.00 | 378.00 | (0.00) | 378.00 |
| _Fasten the stair king joists_ | | | | | | | |
| 8.  R&R Window screen, 1 - 9 SF | 12.00  EA | 46.84 | 29.78 | 118.38 | 710.24 | (0.00) | 710.24 |
| 12.  Deck pier or footing | 18.00  CY | 160.16 | 175.43 | 611.66 | 3,669.97 | (0.00) | 3,669.97 |
| 13.  R&R 2" x 8" lumber - treated (1.33 BF per LF) | 48.00  LF | 5.72 | 6.18 | 56.16 | 336.90 | (0.00) | 336.90 |
| 14.  Carpenter - General Framer - per hour | 12.00  HR | 90.00 | 0.00 | 216.00 | 1,296.00 | (0.00) | 1,296.00 |
| _OTHER STRUCTURES_ | | | | | | | |
| 5.  R&R Picket fence, 3' to 4' high | 62.17  LF | 35.93 | 70.89 | 460.92 | 2,765.58 | (0.00) | 2,765.58 |
| 6.  Seal & paint - wood fence/gate | 62.17  SF | 1.38 | 1.74 | 17.50 | 105.03 | (0.00) | 105.03 |
| 9.  R&R Storage shed - Vinyl - Gable type - 10' x 8' | 1.00  EA | 2,029.73 | 90.93 | 424.12 | 2,544.78 | (0.00) | 2,544.78 |
| 11.  Boat dock - wood | 32.00  SF | 23.79 | 33.94 | 159.04 | 954.26 | (0.00) | 954.26 |
| _CONTENTS_ | | | | | | | |
| 10.  Boat Lift | 1.00  EA | 5,500.00 | 385.00 | 1,177.00 | 7,062.00 | (0.00) | 7,062.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Dwelling Totals:** | | | 446.72 | 2344.88 | 14,069.06 | | 14,069.06 |
| **Other Structures Totals:** | | | 197.50 | 1061.58 | 6,369.65 | | 6,369.65 |
| **Contents Totals:** | | | 385.00 | 1177.00 | 7,062.00 | | 7,062.00 |
| **Total:  Main Level** | | | 1,029.22 | 4,583.46 | 27,500.71 | 0.00 | 27,500.71 |



**Wood Deck RF**                                                    **Height: 8'**

| | |
|---|---|
| 295.48  SF Walls | 82.81  SF Ceiling |
| 378.29  SF Walls & Ceiling | 82.81  SF Floor |
| 9.20  SY Flooring | 36.93  LF Floor Perimeter |
| 36.93  LF Ceil. Perimeter | |

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|

DUNLAP_SWYCSHO00471



**Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

**CONTINUED - Wood Deck RF**

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 15. Contents - move out then reset | 1.00 EA | 77.05 | 0.00 | 15.42 | 92.47 | (0.00) | 92.47 |
| 16. Mask the floor per square foot - plastic and tape - 4 mil | 82.81 SF | 0.29 | 0.35 | 4.88 | 29.24 | (0.00) | 29.24 |
| 17. Mask the walls per square foot - plastic and tape - 4 mil | 295.48 SF | 0.29 | 1.24 | 17.38 | 104.31 | (0.00) | 104.31 |
| 18. R&R AC plywood - 1/2" | 82.81 SF | 4.05 | 11.36 | 69.36 | 416.11 | (0.00) | 416.11 |
| 19. R&R Exterior light fixture | 1.00 EA | 122.69 | 2.94 | 25.12 | 150.75 | (0.00) | 150.75 |
| 20. Seal the ceiling w/PVA primer - one coat | 82.81 SF | 0.69 | 0.35 | 11.50 | 68.99 | (0.00) | 68.99 |
| 21. Texture drywall - machine | 82.81 SF | 0.83 | 0.29 | 13.80 | 82.82 | (0.00) | 82.82 |
| 22. Paint the ceiling - one coat | 82.81 SF | 0.80 | 0.99 | 13.46 | 80.70 | (0.00) | 80.70 |
| 23. R&R Recessed light fixture | 5.00 EA | 160.29 | 12.43 | 162.78 | 976.66 | (0.00) | 976.66 |
| **Dwelling Totals:** | | | **29.95** | **333.70** | **2,002.05** | | **2,002.05** |
| **Totals: Wood Deck RF** | | | **29.95** | **333.70** | **2,002.05** | **0.00** | **2,002.05** |



**Carport shed roof**                                                         **Height: 8'**

| | |
|---|---|
| 544.00 SF Walls | 208.00 SF Ceiling |
| 752.00 SF Walls & Ceiling | 208.00 SF Floor |
| 23.11 SY Flooring | 68.00 LF Floor Perimeter |
| 68.00 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 24. Contents - move out then reset | 1.00 EA | 77.05 | 0.00 | 15.42 | 92.47 | (0.00) | 92.47 |
| 25. Mask the floor per square foot - plastic and tape - 4 mil | 208.00 SF | 0.29 | 0.87 | 12.24 | 73.43 | (0.00) | 73.43 |
| 26. Mask the walls per square foot - plastic and tape - 4 mil | 544.00 SF | 0.29 | 2.28 | 32.02 | 192.06 | (0.00) | 192.06 |
| 27. R&R AC plywood - 1/2" | 208.00 SF | 4.05 | 28.54 | 174.18 | 1,045.12 | (0.00) | 1,045.12 |
| 28. R&R Exterior light fixture | 1.00 EA | 122.69 | 2.94 | 25.12 | 150.75 | (0.00) | 150.75 |
| 29. Seal the ceiling w/PVA primer - one coat | 208.00 SF | 0.69 | 0.87 | 28.88 | 173.27 | (0.00) | 173.27 |
| 30. Texture drywall - machine | 208.00 SF | 0.83 | 0.73 | 34.66 | 208.03 | (0.00) | 208.03 |
| 31. Paint the ceiling - one coat | 208.00 SF | 0.80 | 2.48 | 33.78 | 202.66 | (0.00) | 202.66 |



**Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

**CONTINUED - Carport shed roof**

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Dwelling Totals:** | | | 38.71 | 356.30 | 2,137.79 | | 2,137.79 |
| **Totals:  Carport shed roof** | | | 38.71 | 356.30 | 2,137.79 | 0.00 | 2,137.79 |



**Concrete Pavers Sand**                                                                 **Height: 8'**

| | | |
|---|---|---|
| 1164.73  SF Walls | | 728.76  SF Ceiling |
| 1893.49  SF Walls & Ceiling | | 728.76  SF Floor |
| 80.97  SY Flooring | | 145.59  LF Floor Perimeter |
| 145.59  LF Ceil. Perimeter | | |

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 32.  R&R Paver brick - High grade | 728.76  SF | 16.89 | 188.75 | 2,499.50 | 14,997.01 | (0.00) | 14,997.01 |
| **Dwelling Totals:** | | | 188.75 | 2499.50 | 14,997.01 | | 14,997.01 |
| **Totals:  Concrete Pavers Sand** | | | 188.75 | 2,499.50 | 14,997.01 | 0.00 | 14,997.01 |



**Right Elevation**                                                                 **Height: 8'**

| | | |
|---|---|---|
| 1142.67  SF Walls | | 1058.75  SF Ceiling |
| 2201.42  SF Walls & Ceiling | | 1058.75  SF Floor |
| 117.64  SY Flooring | | 142.83  LF Floor Perimeter |
| 142.83  LF Ceil. Perimeter | | |

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 33.  Clean with pressure/chemical spray | 1058.75  SF | 0.43 | 0.74 | 91.20 | 547.20 | (0.00) | 547.20 |
| 34.  Exterior - seal or prime and prep for paint | 1058.75  SF | 0.79 | 9.63 | 169.20 | 1,015.24 | (0.00) | 1,015.24 |
| 35.  Exterior - paint one coat | 1058.75  SF | 0.88 | 16.31 | 189.60 | 1,137.61 | (0.00) | 1,137.61 |



**Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

**CONTINUED - Right Elevation**

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 36.  Additional cost for high wall or ceiling - Over 14' | 402.33  SF | 0.08 | 0.00 | 6.44 | 38.63 | (0.00) | 38.63 |
| 37.  Prime & paint exterior soffit - wood | 100.83  SF | 2.67 | 3.60 | 54.56 | 327.38 | (0.00) | 327.38 |
| 38.  General clean - up | 1.00  HR | 53.01 | 0.00 | 10.60 | 63.61 | (0.00) | 63.61 |
| 39.  R&R Fascia - 1" x 12" PVC | 50.42  LF | 12.33 | 21.07 | 128.54 | 771.29 | (0.00) | 771.29 |
| **Dwelling Totals:** | | | **51.35** | **650.14** | **3,900.96** | | **3,900.96** |
| **Totals:  Right Elevation** | | | **51.35** | **650.14** | **3,900.96** | **0.00** | **3,900.96** |

**Left Elevation**                                                                                    **Height: 8'**

1142.67 SF Walls                              1058.75 SF Ceiling
2201.42 SF Walls & Ceiling                    1058.75 SF Floor
117.64 SY Flooring                            142.83 LF Floor Perimeter
142.83 LF Ceil. Perimeter

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 40.  Clean with pressure/chemical spray | 1058.75  SF | 0.43 | 0.74 | 91.20 | 547.20 | (0.00) | 547.20 |
| 41.  Exterior - seal or prime and prep for paint | 1058.75  SF | 0.79 | 9.63 | 169.20 | 1,015.24 | (0.00) | 1,015.24 |
| 42.  Exterior - paint one coat | 1058.75  SF | 0.88 | 16.31 | 189.60 | 1,137.61 | (0.00) | 1,137.61 |
| 43.  Additional cost for high wall or ceiling - Over 14' | 402.33  SF | 0.08 | 0.00 | 6.44 | 38.63 | (0.00) | 38.63 |
| 44.  Prime & paint exterior soffit - wood | 100.83  SF | 2.67 | 3.60 | 54.56 | 327.38 | (0.00) | 327.38 |
| 45.  General clean - up | 1.00  HR | 53.01 | 0.00 | 10.60 | 63.61 | (0.00) | 63.61 |
| **Dwelling Totals:** | | | **30.28** | **521.60** | **3,129.67** | | **3,129.67** |
| **Totals:  Left Elevation** | | | **30.28** | **521.60** | **3,129.67** | **0.00** | **3,129.67** |



**Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net



**Rear Elevation**                                                                                       **Height: 8'**

|  |  |
|---|---|
| 812.00 SF Walls | 632.50 SF Ceiling |
| 1444.50 SF Walls & Ceiling | 632.50 SF Floor |
| 70.28 SY Flooring | 101.50 LF Floor Perimeter |
| 101.50 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 46. Clean with pressure/chemical spray | 632.50 SF | 0.43 | 0.44 | 54.48 | 326.90 | (0.00) | 326.90 |
| 47. Exterior - seal or prime and prep for paint | 632.50 SF | 0.79 | 5.76 | 101.10 | 606.54 | (0.00) | 606.54 |
| 48. Exterior - paint one coat | 632.50 SF | 0.88 | 9.74 | 113.26 | 679.60 | (0.00) | 679.60 |
| 49. Additional cost for high wall or ceiling - Over 14' | 240.35 SF | 0.08 | 0.00 | 3.84 | 23.07 | (0.00) | 23.07 |
| 50. Prime & paint exterior soffit - wood | 57.50 SF | 2.67 | 2.05 | 31.12 | 186.70 | (0.00) | 186.70 |
| 51. General clean - up | 1.00 HR | 53.01 | 0.00 | 10.60 | 63.61 | (0.00) | 63.61 |
| **Dwelling Totals:** | | | **17.99** | **314.40** | **1,886.42** | | **1,886.42** |
| **Totals:  Rear Elevation** | | | **17.99** | **314.40** | **1,886.42** | **0.00** | **1,886.42** |



**Front Elevation**                                                                                      **Height: 8'**

|  |  |
|---|---|
| 812.00 SF Walls | 632.50 SF Ceiling |
| 1444.50 SF Walls & Ceiling | 632.50 SF Floor |
| 70.28 SY Flooring | 101.50 LF Floor Perimeter |
| 101.50 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 52. Clean with pressure/chemical spray | 632.50 SF | 0.43 | 0.44 | 54.48 | 326.90 | (0.00) | 326.90 |
| 53. Exterior - seal or prime and prep for paint | 632.50 SF | 0.79 | 5.76 | 101.10 | 606.54 | (0.00) | 606.54 |
| 54. Exterior - paint one coat | 632.50 SF | 0.88 | 9.74 | 113.26 | 679.60 | (0.00) | 679.60 |
| 55. Additional cost for high wall or ceiling - Over 14' | 240.35 SF | 0.08 | 0.00 | 3.84 | 23.07 | (0.00) | 23.07 |
| 56. Prime & paint exterior soffit - wood | 57.50 SF | 2.67 | 2.05 | 31.12 | 186.70 | (0.00) | 186.70 |
| 57. General clean - up | 1.00 HR | 53.01 | 0.00 | 10.60 | 63.61 | (0.00) | 63.61 |
| **Dwelling Totals:** | | | **17.99** | **314.40** | **1,886.42** | | **1,886.42** |
| **Totals:  Front Elevation** | | | **17.99** | **314.40** | **1,886.42** | **0.00** | **1,886.42** |



**Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

## Roof Solar Rubber

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 58.  R&R Solar water heater panel - over 33 SF | 6.00 EA | 2,171.29 | 486.96 | 2,702.94 | 16,217.64 | (0.00) | 16,217.64 |
| **Dwelling Totals:** | | | 486.96 | 2702.94 | 16,217.64 | | 16,217.64 |
| **Totals:  Roof Solar Rubber** | | | 486.96 | 2,702.94 | 16,217.64 | 0.00 | 16,217.64 |
| **Area Dwelling Total:** | | | 1,308.70 | 10,037.86 | 60,227.02 | | 60,227.02 |
| **Area Other Structures Total:** | | | 197.50 | 1,061.58 | 6,369.65 | | 6,369.65 |
| **Area Contents Total:** | | | 385.00 | 1,177.00 | 7,062.00 | | 7,062.00 |
| **Totals:  Main Level** | | | 1,891.20 | 12,276.44 | 73,658.67 | 0.00 | 73,658.67 |

## Additional Floor



**2nd floor wood deck**                                                                                     **Height: 8'**

| | |
|---|---|
| 391.92 SF Walls | 143.34 SF Ceiling |
| 535.27 SF Walls & Ceiling | 143.34 SF Floor |
| 15.93 SY Flooring | 48.99 LF Floor Perimeter |
| 48.99 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 59.  Contents - move out then reset - Small room | 1.00 EA | 57.84 | 0.00 | 11.56 | 69.40 | (0.00) | 69.40 |
| 60.  Stain/finish deck handrail | 14.83 LF | 8.39 | 1.84 | 25.24 | 151.50 | (0.00) | 151.50 |
| 61.  R&R Deck guard rail - cedar | 14.83 LF | 69.56 | 42.42 | 214.80 | 1,288.79 | (0.00) | 1,288.79 |
| 62.  Patio/pool Enclosure - Rescreen | 148.33 SF | 1.77 | 4.98 | 53.52 | 321.05 | (0.00) | 321.05 |
| 63.  Stain/finish deck | 143.34 SF | 1.13 | 3.01 | 33.00 | 197.98 | (0.00) | 197.98 |
| 64.  R&R Screen door - metal - 30" - 36" - full screen (no glass) | 1.00 EA | 209.91 | 8.40 | 43.68 | 261.99 | (0.00) | 261.99 |
| 65.  Mask the floor per square foot - plastic and tape - 4 mil | 143.34 SF | 0.29 | 0.60 | 8.44 | 50.61 | (0.00) | 50.61 |
| 66.  Mask the walls per square foot - plastic and tape - 4 mil | 391.92 SF | 0.29 | 1.65 | 23.08 | 138.39 | (0.00) | 138.39 |
| 67.  R&R AC plywood - 1/2" | 143.34 SF | 4.05 | 19.67 | 120.04 | 720.24 | (0.00) | 720.24 |
| 68.  R&R Exterior light fixture | 1.00 EA | 122.69 | 2.94 | 25.12 | 150.75 | (0.00) | 150.75 |
| 69.  Seal the ceiling w/PVA primer - one coat | 143.34 SF | 0.69 | 0.60 | 19.90 | 119.40 | (0.00) | 119.40 |
| 70.  Texture drywall - machine | 143.34 SF | 0.83 | 0.50 | 23.90 | 143.37 | (0.00) | 143.37 |



**Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

**CONTINUED - 2nd floor wood deck**

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 71. Paint the ceiling - one coat | 143.34 SF | 0.80 | 1.71 | 23.28 | 139.66 | (0.00) | 139.66 |
| **Dwelling Totals:** | | | 88.32 | 625.56 | 3,753.13 | | 3,753.13 |
| **Totals: 2nd floor wood deck** | | | 88.32 | 625.56 | 3,753.13 | 0.00 | 3,753.13 |

**2nd floor wood deck fr**                                                    **Height: 8'**



593.33 SF Walls                         236.15 SF Ceiling
829.49 SF Walls & Ceiling               236.15 SF Floor
26.24 SY Flooring                       74.17 LF Floor Perimeter
74.17 LF Ceil. Perimeter

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 72. Contents - move out then reset - Small room | 1.00 EA | 57.84 | 0.00 | 11.56 | 69.40 | (0.00) | 69.40 |
| 73. Stain/finish deck handrail | 50.83 LF | 8.39 | 6.30 | 86.56 | 519.32 | (0.00) | 519.32 |
| 74. R&R Deck guard rail - cedar | 46.58 LF | 69.56 | 133.23 | 674.68 | 4,048.02 | (0.00) | 4,048.02 |
| 75. Patio/pool Enclosure - Rescreen | 465.80 SF | 1.77 | 15.65 | 168.04 | 1,008.15 | (0.00) | 1,008.15 |
| 76. Stain/finish deck | 236.15 SF | 1.13 | 4.96 | 54.38 | 326.19 | (0.00) | 326.19 |
| 77. R&R Screen door - metal - 30" - 36" - full screen (no glass) | 1.00 EA | 209.91 | 8.40 | 43.68 | 261.99 | (0.00) | 261.99 |
| 78. Mask the floor per square foot - plastic and tape - 4 mil | 236.15 SF | 0.29 | 0.99 | 13.90 | 83.37 | (0.00) | 83.37 |
| 79. Mask the walls per square foot - plastic and tape - 4 mil | 593.33 SF | 0.29 | 2.49 | 34.92 | 209.48 | (0.00) | 209.48 |
| 80. R&R AC plywood - 1/2" | 236.15 SF | 4.05 | 32.40 | 197.76 | 1,186.57 | (0.00) | 1,186.57 |
| 81. R&R Exterior light fixture | 1.00 EA | 122.69 | 2.94 | 25.12 | 150.75 | (0.00) | 150.75 |
| 82. Seal the ceiling w/PVA primer - one coat | 236.15 SF | 0.69 | 0.99 | 32.78 | 196.71 | (0.00) | 196.71 |
| 83. Texture drywall - machine | 236.15 SF | 0.83 | 0.83 | 39.36 | 236.19 | (0.00) | 236.19 |
| 84. Paint the ceiling - one coat | 236.15 SF | 0.80 | 2.81 | 38.34 | 230.07 | (0.00) | 230.07 |
| 85. R&R Fascia - 1" x 12" PVC | 50.42 LF | 12.33 | 21.07 | 128.54 | 771.29 | (0.00) | 771.29 |
| **Dwelling Totals:** | | | 233.06 | 1549.62 | 9,297.50 | | 9,297.50 |
| **Totals: 2nd floor wood deck fr** | | | 233.06 | 1,549.62 | 9,297.50 | 0.00 | 9,297.50 |
| **Area Dwelling Total:** | | | 321.38 | 2,175.18 | 13,050.63 | | 13,050.63 |



**Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

| | | | | | |
|---|---|---|---|---|---|
| **Totals:  Additional Floor** | 321.38 | 2,175.18 | 13,050.63 | 0.00 | 13,050.63 |

## Roof



**5V Metal roof**

| | | |
|---|---|---|
| 2317.50  Surface Area | 23.18  Number of Squares |
| 227.60  Total Perimeter Length | 22.00  Total Ridge Length |
| 100.98  Total Hip Length | |

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 86.  Remove Metal roofing - High grade | 2317.50  SF | 0.78 | 0.00 | 361.54 | 2,169.19 | (0.00) | 2,169.19 |
| 87.  Re-nailing of roof sheathing - complete re-nail | 2317.50  SF | 0.37 | 1.62 | 171.82 | 1,030.92 | (0.00) | 1,030.92 |
| 88.  Metal roofing - High grade | 2549.25  SF | 14.70 | 590.66 | 7,612.94 | 45,677.58 | (0.00) | 45,677.58 |
| 89.  Remove Additional charge for high roof (2 stories or greater) | 107.50  SQ | 8.16 | 0.00 | 175.44 | 1,052.64 | (0.00) | 1,052.64 |
| 90.  Additional charge for high roof (2 stories or greater) | 123.62  SQ | 31.70 | 0.00 | 783.76 | 4,702.51 | (0.00) | 4,702.51 |
| 91.  Eave trim for metal roofing - 26 gauge | 209.75  LF | 7.63 | 31.71 | 326.42 | 1,958.52 | (0.00) | 1,958.52 |
| 92.  Hip / Ridge cap - metal roofing | 122.98  LF | 7.70 | 19.20 | 193.24 | 1,159.39 | (0.00) | 1,159.39 |
| 93.  Drip edge | 231.75  LF | 3.81 | 20.28 | 180.66 | 1,083.91 | (0.00) | 1,083.91 |
| 94.  Ice & water barrier - High temp | 231.75  SF | 2.63 | 12.98 | 124.50 | 746.98 | (0.00) | 746.98 |
| 95.  Neoprene pipe jack flashing for metal roofing | 2.00  EA | 80.87 | 4.06 | 33.16 | 198.96 | (0.00) | 198.96 |
| 96.  Aluminum rake/gable edge trim - mill finish | 17.85  LF | 7.12 | 2.06 | 25.84 | 154.99 | (0.00) | 154.99 |
| 97.  Step flashing | 28.50  LF | 14.94 | 3.93 | 85.94 | 515.66 | | 515.66 |
| 98.  R&R Porch or deck handrail w/turned balusters | 28.83  LF | 49.64 | 42.26 | 294.70 | 1,768.08 | (0.00) | 1,768.08 |
| 99.  Paint deck handrail - 2 coats paint | 28.83  LF | 11.52 | 1.01 | 66.62 | 399.75 | (0.00) | 399.75 |
| 100.  General clean - up | 12.00  HR | 53.01 | 0.01 | 127.22 | 763.35 | (0.00) | 763.35 |
| **Dwelling Totals:** | | | 729.78 | 10563.80 | 63,382.43 | | 63,382.43 |
| **Totals:  5V Metal roof** | | | 729.78 | 10,563.80 | 63,382.43 | 0.00 | 63,382.43 |
| **Area Dwelling Total:** | | | 729.78 | 10,563.80 | 63,382.43 | | 63,382.43 |
| **Totals:  Roof** | | | 729.78 | 10,563.80 | 63,382.43 | 0.00 | 63,382.43 |

## General



**Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 101. Temporary toilet (per month) | 1.00 MO | 119.00 | 0.00 | 23.80 | 142.80 | (0.00) | 142.80 |
| 102. Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | 650.00 | 0.00 | 130.00 | 780.00 | (0.00) | 780.00 |
| **Dwelling Totals:** | | | **0.00** | **153.80** | **922.80** | | **922.80** |
| **Totals:  General** | | | **0.00** | **153.80** | **922.80** | **0.00** | **922.80** |

**Labor Minimums Applied**

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | |
| 103. Door labor minimum | 1.00 EA | 66.91 | 0.00 | 13.38 | 80.29 | (0.00) | 80.29 |
| 104. Window labor minimum | 1.00 EA | 126.09 | 0.00 | 25.22 | 151.31 | (0.00) | 151.31 |
| 105. Drywall labor minimum | 1.00 EA | 37.36 | 0.00 | 7.48 | 44.84 | (0.00) | 44.84 |
| **Dwelling Totals:** | | | **0.00** | **46.08** | **276.44** | | **276.44** |
| **Totals:  Labor Minimums Applied** | | | **0.00** | **46.08** | **276.44** | **0.00** | **276.44** |
| **Area Dwelling Total:** | | | **2,359.86** | **22,976.72** | **137,859.32** | | **137,859.32** |
| **Area Other Structures Total:** | | | **197.50** | **1,061.58** | **6,369.65** | | **6,369.65** |
| **Area Contents Total:** | | | **385.00** | **1,177.00** | **7,062.00** | | **7,062.00** |
| **Line Item Totals:  DUNLAP_SWYCSHO00471** | | | **2,942.36** | **25,215.30** | **151,290.97** | **0.00** | **151,290.97** |

## Grand Total Areas:

| | | | |
|---|---|---|---|
| 9,762.80 SF Walls | 7,207.78 SF Ceiling | 16,970.59 SF Walls and Ceiling | |
| 7,207.78 SF Floor | 800.86 SY Flooring | 1,220.35 LF Floor Perimeter | |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 1,220.35 LF Ceil. Perimeter | |
| | | | |
| 7,207.78 Floor Area | 7,576.25 Total Area | 9,762.80 Interior Wall Area | |
| 10,026.65 Exterior Wall Area | 987.09 Exterior Perimeter of Walls | | |
| | | | |
| 2,317.50 Surface Area | 23.18 Number of Squares | 227.60 Total Perimeter Length | |
| 22.00 Total Ridge Length | 100.98 Total Hip Length | | |

 **Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 137,859.32 | 91.12% | 137,859.32 | 91.12% |
| Other Structures | 6,369.65 | 4.21% | 6,369.65 | 4.21% |
| Contents | 7,062.00 | 4.67% | 7,062.00 | 4.67% |
| Total | 151,290.97 | 100.00% | 151,290.97 | 100.00% |

 **Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 112,522.74 |
| Material Sales Tax | 2,359.86 |
| Subtotal | 114,882.60 |
| Overhead | 11,488.36 |
| Profit | 11,488.36 |
| **Replacement Cost Value** | **$137,859.32** |
| **Net Claim** | **$137,859.32** |

_____
Mark Hazel



## Coastal Claims Services

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

## Summary for Other Structures

| | |
|---|---:|
| Line Item Total | 5,110.57 |
| Material Sales Tax | 197.50 |
| Subtotal | 5,308.07 |
| Overhead | 530.79 |
| Profit | 530.79 |
| **Replacement Cost Value** | **$6,369.65** |
| **Net Claim** | **$6,369.65** |

_____
Mark Hazel

 **Coastal Claims Services**

Coastal Claims Services
2650 N. Dixie Freeway
New Smyrna Beach, FL 32168
http://www.coastalclaims.net

## Summary for Contents

| | |
|---|---:|
| Line Item Total | 5,500.00 |
| Material Sales Tax | 385.00 |
| | |
| Subtotal | 5,885.00 |
| Overhead | 588.50 |
| Profit | 588.50 |
| | |
| **Replacement Cost Value** | **$7,062.00** |
| **Net Claim** | **$7,062.00** |

_____
Mark Hazel



Concrete Pavers Sand



Rear Elevation

Left Elevation

Screened Deck

Carport shedRoof    Base

Wood Deck RF

Right Elevation

Front Elevation

N

Main Level



2nd floor wood deck

Second Floor

2nd floor wood deck fr



N

Additional Floor

Roof

Page: 17

12/20/2022

N ⇐



5V Metal roof

F1(A)

F2(B)

F3(C)

F4(D)

F5

28.5'

28.5'

29' 11"

29' 11"

25.3'

26.3'

34.9'

58.9'

29.9'

4'

8'11"

8'

Roof

DUNLAP_SWYCSHO00471



POLICY NUMBER: AL91-006712-00
POLICYHOLDER: Ryan Dunlap

**Dear Ryan Dunlap,**

Thank you for selecting Swyfft for your homeowners insurance.  We are committed to providing the best service to all our valued policyholders.

If you require assistance, please contact us directly or your agency below.

**Kevin Feuser**
**Brightway-Kevin Feuser**
**9414743456**
**kevin.feuser@brightway.com**

Sincerely,
The Swyfft Team





# How to Report a Claim

Claims for Swyfft Homeowners Policies with coverage provided by Clear Blue Specialty Insurance should be reported directly to Swyfft as soon after the loss as possible. Claims may be reported by any of the following options 24 hours a day, 7 days a week:

| | |
|---|---|
| Telephone: | (877) 799-3389 |
| Website: | swyfft.com/claims |

**In order to ensure proper assistance, it is important to include the policy number and the zip code of the property location as well as name of the insured and contact information.**

**Please provide as much information about the loss details and involved parties as possible so that Swyfft can provide immediate assistance to any emergency needs.**

Be sure to include contact information such as your name, property address, email addresses and alternate telephone numbers so that the Swyfft claims professional can contact you as soon as possible. A claim acknowledgement will also be sent via email with the claim number, the assigned Swyfft claims professional and any emergency service providers we send out to help you.

You've got questions. We've got answers:

855.479.9338 | www.swyfft.com | customersupport@swyfft.com



Insured's Name:   Ryan Dunlap                                          Policy #:   AL91-006712-00

Policy Dates: From:   6/14/2022 12:00:00 AM          To:  6/14/2023 12:00:00 AM

Surplus Lines Agent's Name:   Richard Trezza

Surplus Lines Agent's Physical Address:   44 Headquarters Plaza, North Tower, Morristown NJ 07960

Producing Agent's Name:  Kevin Feuser

Producing Agent's Physical Address:   3631 South Access Road Englewood FL 34224

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

Policy Premium:    $13,358.00              Policy Fee:          $100.00

Inspection Fee:    $100.00                Service Fee:         $8.13

Tax:               $669.77               Citizen's Assessment:  $0.00

EMPA Surcharge:   $2.00

Surplus Lines Agent's Countersignature:

| X | **THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.** |

| | **THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.** |

# Clear Blue Specialty Insurance Company

## Privacy Notice

When you apply to Swyfft/Clear Blue Specialty Insurance Company ("we", "us", "our") for any type of insurance, you disclose information about yourself to us. This notice applies to personal information about individuals that we collect through our websites, products, services, and applications. This privacy notice does not govern information collected by any third party, including through any application or content that may be linked to, or accessible from, our Services. This statement is intended to explain and disclose our policies and practices regarding the collection, disclosure and protection of such information.

**Information collected**

We collect information about you from the following sources:
- Information the insurance agent receives from you on applications or other forms;
- Information about your transactions (including claims) with us, our affiliates and others; and
- Information we receive from other agents, brokers, administrators, insurance support agencies, legal counsel, consumer reporting agencies and government reporting agencies.

**Information Disclosed**

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business or if requested by a government agency.

**Confidentiality and Security of Information**

We restrict access to information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to guard your information.

**Access to and Correction of Your Information**

If you have any questions about this privacy notice or our use of your personal information, please email to customersupport@swyfft.com or write to:

Swyfft LLC
Attention: Compliance Department - Privacy
44 Headquarters Plaza, North Tower
Morristown, NJ 07960



**Swyfft LLC · PO Box 21649 New York, NY 10087-1649**

Policy Number: AL91-006712-00                                    HOMEOWNERS

Date of Issue: 05/19/2022        Call Kevin Feuser at 9414743456 for Policy Inquiries        HO SW SL FL DS 01 05 21

## HOMEOWNERS POLICY DECLARATIONS New Business

| | |
|---|---|
| Company Name: | **Clear Blue Specialty Insurance Company** |
| Producer Name: | Swyfft, LLC |
| Named Insured: Ryan Dunlap, Deanna Dunlap | |
| Mailing Address: PO Box 543<br>Placida, FL 33946 | |

The Insured Location Is Located At The Above Address Unless Otherwise Stated:
16 Palm Dr  Placida, FL 33946

| Policy Period | |
|---|---|
| Effective Date: 6/14/2022 12:00:00 AM | 12:01 AM standard time at the insured location |
| Expiration Date: 6/14/2023 12:00:00 AM | 12:01 AM standard time at the insured location |

We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions.

Coverage is provided where a premium or limit of liability is shown for the coverage.

| Section I – Coverages | Limit Of Liability | |
|---|---|---|
| A. Dwelling | $1,000,000 | |
| B. Other Structures | $70,000 | |
| C. Personal Property | $240,000 | |
| D. Loss Of Use | $200,000 | |
| Section II – Coverages | | |
| E. Personal Liability | $500,000 | Each Occurrence |
| F. Medical Payments To Others | $5,000 | Each Person |
| | | |
| Additional Coverages | | |
| Water Back-Up/Sump Discharge | $5,000 | |
| Ordinance or Law | 25% | |
| Direct Repair | $2,000 | |
| Limited Fungi Liability | $50,000 | |
| Limited Fungi Property | $10,000 | |
| Roof Materials Payment Schedule | Yes | |
| **Subtotal Annual Premium** | $13,358.00 | |
| Policy Fee | $100.00 | |
| Inspection Fee | $100.00 | |
| EMPA Surcharge | $2.00 | |
| Surplus Lines Premium Tax | $669.77 | |
| Surplus Lines Service Fee | $8.13 | |
| **Total Hurricane Premium** | $8,910.37 | |
| **Total Non-Hurricane Premium** | $4,447.63 | |
| **Total Annual Premium and Fees** | $14,237.90 | |

| Forms And Endorsements Made Part Of This Policy (Number(s) And Edition Date(s)) | | |
|---|---|---|
| Surplus Lines Disclosure | SWY ES DISC | 11 20 |
| Privacy Notice | SW HO CBSIC PRI | 11 20 |
| Homeowners Policy Declarations | HO SW SL FL DS 01 | 05 21 |
| Homeowners E&S Policy Jacket | SWY NC PJ | 05 21 |
| Table of Contents | HO SW FL 07 | 12 18 |
| Homeowners 3 - Special Form | HO 00 03 | 05 11 |
| Assignment of Benefits Fully Prohibited | HO SW SL AOB | 11 20 |
| OFAC Adivsory Notice | IL P 001 | 01 04 |
| Residence Premises Definition Endorsement | HO 06 48 | 10 15 |
| Limited Water Back-Up and Sump Discharge or Overflow Coverage | HO 04 95 | 01 14 |
| Animal Liability Exclusion | HO SW FL 05X | 04 22 |
| Animal Liability Sublimit Endorsement | HO SW FL 05 | 04 18 |
| Calendar Year Hurricane Deductible (Percentage) With Supplemental Repo | HO 03 51 | 05 13 |
| Deductible Options Notice | HO SW DN FL | 01 19 |
| Direct Repair Deductible Savings Program | HO SW 14 | 09 20 |
| Minimum Earned Premium | HO SW SL MEP | 11 20 |
| Fungi, Wet or Dry Rot, or Bacteria Increased Amount of Section I – FL | HO 03 33 | 05 13 |
| Reasonable Emergency Measures and Duties After Loss | HO SW 18 | 01 19 |
| Limited Fungi, Wet or Dry Rot, or Bacteria Section II - Liability Coverage - Florida | HO 03 34 | 05 13 |
| No Section II – Liability Coverages for Home Day Care Business | HO 04 96 | 10 00 |
| Ordinance and Law Coverage Notification Form | HO SW 12 | 03 18 |
| Ordinance or law Amended Amount of Coverage | HO SW 08 | 03 18 |
| Personal Injury Coverage - Florida | HO 24 83 | 05 13 |
| Personal Property Replacement Cost Loss Settlement - Florida | HO 23 86 | 05 13 |
| Windstorm or Hail Exterior Paint or Waterproofing Exclusion - Seacoast | HO SW 05 | 01 19 |
| Roofing Materials Payment Schedule | SW HO FL ACV ROOF | 03 21 |
| Special Provisions - Florida | HO SW 01 09 | 07 21 |

**Hurricane Deductible: Hurricane Deductible: 3.00% of Coverage A ($30,000.00)**

All Other Perils Deductible: $10,000.00

Section II – Other Insured Locations (Address):

| Mortgagee(s)/Lienholder(s) | | |
|---|---|---|
| Name | Address | Loan Number |
| | | |
| | | |
| | | |

| Loss Payee(s) – Personal Property | | |
|---|---|---|
| (Name and Address of Loss Payee and Personal Property Involved) | | |
| Name | Address | Personal Property |
| | | |
| | | |
| | | |

| Rating Information | | | |
|---|---|---|---|
| Occupancy Type: | Owner | Year Built: | 2005 |
| Roof Age: | 17 | Roofing Material: | Standing Seam Metal |

| Countersignatures Of Authorized Representatives |
|---|
| SWY PJ2 02 20 |

A rate of adjustment of -6.00% has been applied to the windstorm and hail premium to reflect the Building Code Effectiveness Grade in your area. Adjustments range from 1% surcharge to 12% credit.

**THIS POLICY DOES NOT ALLOW THE UNRESTRICTED ASSIGNMENT OF POST-LOSS INSURANCE BENEFITS. BY PURCHASING THIS POLICY, YOU WAIVE YOUR RIGHT TO FREELY ASSIGN OR TRANSFER THE POST-LOSS PROPERTY INSURANCE BENEFITS AVAILABLE UNDER THIS POLICY TO A THIRD PARTY OR TO OTHERWISE FREELY ENTER INTO AN ASSIGNMENT AGREEMENT AS THE TERM IS DEFINED IN SECTION 627.7152 OF THE FLORIDA STATUTES.**

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

**LAW AND ORDINANCE: LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. PLEASE DISCUSS WITH YOUR INSURANCE AGENT.**

**FLOOD INSURANCE: YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE. YOUR HOMEOWNER'S INSURANCE POLICY DOES NOT INCLUDE COVERAGE FOR DAMAGE RESULTING FROM FLOOD EVEN IF HURRICANE WINDS AND RAIN CAUSED THE FLOOD TO OCCUR. WITHOUT SEPARATE FLOOD INSURANCE COVERAGE, YOU MAY HAVE UNCOVERED LOSSES CAUSED BY FLOOD. PLEASE DISCUSS THE NEED TO PURCHASE SEPARATE FLOOD INSURANCE COVERAGE WITH YOUR INSURANCE AGENT.**

**YOUR POLICY PROVIDES COVERAGE FOR A CATASTROPHIC GROUND COVER COLLAPSE THAT RESULTS IN THE PROPERTY BEING CONDEMNED AND UNINHABITABLE. OTHERWISE, YOUR POLICY DOES NOT PROVIDE COVERAGE FOR SINKHOLE LOSSES. YOU MAY PURCHASE ADDITIONAL COVERAGE FOR SINKHOLE LOSSES FOR AN ADDITIONAL PREMIUM.**

# POLICY JACKET

## POLICY JACKET, DECLARATIONS PAGE, FORMS AND ENDORSEMENTS COMPLETE THIS POLICY

In Witness Whereof, we have caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____    _____

Surplus Lines Agent's Name:        Richard  Trezza

Surplus Lines  Agent's  Address:    44 Headquarters Plaza, North
                                    Tower, Morristown, NJ 07960

Surplus Lines Agent's License #:    1988345

Surplus  Lines  Agent's  Signature:

# CLEAR BLUE SPECIALTY INSURANCE

## SWYFFT VOLUNTARY HOMEOWNERS MULTI-PERIL PROGRAM

## POLICY TABLE OF CONTENTS

**I.  HOMEOWNERS 3 – SPECIAL FORM**                                           **Page**

   A.  AGREEMENT ...................................................................................................1

   B.  DEFINITIONS ...................................................................................................1

   C.  SECTION I – PROPERTY COVERAGES ...........................................................3

   D.  SECTION I – PERILS INSURED AGAINST .......................................................9

   E.  SECTION I – EXCLUSIONS .............................................................................12

   F.  SECTION I – CONDITIONS .............................................................................13

   G.  SECTION II – LIABILITY COVERAGES ...........................................................17

   H.  SECTION II – EXCLUSIONS ...........................................................................17

   J.  SECTION II – ADDITIONAL COVERAGES ......................................................20

   K.  SECTION II – CONDITIONS ...........................................................................21

   L.  SECTIONS I AND II – CONDITIONS ...............................................................23

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

**(1)** Ownership of such vehicle or craft by an "insured";

**(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

**(3)** Entrustment of such vehicle or craft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

**(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

**(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

**b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a resident of your household who is your relative; or

**c.** Under Section **II:**

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person described in **5.a.** or **b.;** or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

**a.** The one-family dwelling where you reside;

**b.** The two-, three- or four-family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

© Insurance Services Office, Inc., 2010

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A**. Use of this coverage does not reduce the Coverage **A** limit of liability.

### C. Coverage C – Personal Property

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Locations**

   a. **Other Residences**

      Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

      (1) Moved from the "residence premises" because it is:

         (a) Being repaired, renovated or rebuilt; and

         (b) Not fit to live in or store property in; or

      (2) In a newly acquired principal residence for 30 days from the time you begin to move the property there.

   b. **Self-storage Facilities**

      Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

      (1) Moved from the "residence premises" because it is:

         (a) Being repaired, renovated or rebuilt; and

         (b) Not fit to live in or store property in; or

      (2) Usually located in an "insured's" residence, other than the "residence premises".

### 3. Special Limits Of Liability

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

**b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

**j.** $1,500 on portable electronic equipment that:

**(1)** Reproduces, receives or transmits audio, visual or data signals;

**(2)** Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

**(3)** Is in or upon a "motor vehicle".

**k.** $250 for antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

### 4. Property Not Covered

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

This includes a "motor vehicle's" equipment and parts. However, this Paragraph **4.c.** does not apply to:

**(1)** Portable electronic equipment that:

**(a)** Reproduces, receives or transmits audio, visual or data signals; and

**(b)** Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

**(2)** "Motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service a residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

   **(1)** Books of account, drawings or other paper records; or

   **(2)** Computers and related equipment.

   We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

   **(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   **(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

   **(1)** Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

   **(2)** A neighbor's trees felled by a Peril Insured Against under Coverage **C;**

   provided the trees:

   **(3)** Damage a covered structure; or

   **(4)** Do not damage a covered structure, but:

      **(a)** Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section **I – Conditions.**

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

© Insurance Services Office, Inc., 2010

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **Q.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

**b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage – Collapse does not apply to:

**(1)** A building or any part of a building that is in danger of falling down or caving in;

**(2)** A part of a building that is standing, even if it has separated from another part of the building; or

**(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage **C;**

**(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**e.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**f.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**a.** We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

    © Insurance Services Office, Inc., 2010

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C**.

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

**A. Coverage A – Dwelling And Coverage B – Other Structures**

1. We insure against direct physical loss to property described in Coverages **A** and **B**.

2. We do not insure, however, for loss:

   a. Excluded under Section **I** – Exclusions;

   b. Involving collapse, including any of the following conditions of property or any part of the property:

      (1) An abrupt falling down or caving in;

      (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

      (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above;

      except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

   c. Caused by:

      (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

         (a) Maintain heat in the building; or

         (b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

   (2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (a) Fence, pavement, patio or swimming pool;

      (b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

      (c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

      (d) Pier, wharf or dock;

   (3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   (4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   (5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

      (a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

      (b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, rodents or insects;

**(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

**(i)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion**
4. **Riot Or Civil Commotion**
5. **Aircraft**

This peril includes self-propelled missiles and spacecraft.

6. **Vehicles**
7. **Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**
9. **Theft**

a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

b. This peril does not include loss caused by theft:

(1) Committed by an "insured";

(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

(4) That occurs off the "residence premises" of:

(a) Trailers, semitrailers and campers;

(b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

(c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

10. **Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

12. **Accidental Discharge Or Overflow Of Water Or Steam**

a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

b. This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

(4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

d. Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

    **a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

        **(1)** Maintain heat in the building; or

        **(2)** Shut off the water supply and drain all systems and appliances of water.

    However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

    **b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

    This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

    This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    **1. Ordinance Or Law**

        Ordinance Or Law means any ordinance or law:

        **a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I – Property Coverages;**

        **b.** The requirements of which result in a loss in value to property; or

    **c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

        Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

    This Exclusion **A.1.** applies whether or not the property has been physically damaged.

    **2. Earth Movement**

        Earth Movement means:

        **a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

        **b.** Landslide, mudslide or mudflow;

        **c.** Subsidence or sinkhole; or

        **d.** Any other earth movement including earth sinking, rising or shifting.

    This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.d.,** is caused by an act of nature or is otherwise caused.

    However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.d.,** is covered.

    **3. Water**

        This means:

        **a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

        **b.** Water which:

            **(1)** Backs up through sewers or drains; or

            **(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

        **c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

        **d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion.

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **N.** Nuclear Hazard Clause under Section **I – Conditions**.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I – CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

## C. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I – Property Coverages**;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in **6.** above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I – Property Coverages**, stating the amount and cause of loss.

## D. Loss Settlement

In this Condition **D.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I – Property Coverages**. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

      If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

© Insurance Services Office, Inc., 2010

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**E. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**G. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**I. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

**K. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**L. Mortgage Clause**

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

**c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

**3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**4.** If we pay the mortgagee for any loss and deny payment to you:

**a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Nuclear Hazard Clause**

**1.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**2.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**3.** This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Q. Policy Period**

This policy applies only to loss which occurs during the policy period.

© Insurance Services Office, Inc., 2010

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**S. Loss Payable Clause**

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

**A. "Motor Vehicle Liability"**

1. Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service a residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place:

**(a)** On an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.;** or

**(b)** Off an "insured location" and the "motor vehicle" is:

**(i)** Designed as a toy vehicle for use by children under seven years of age;

**(ii)** Powered by one or more batteries; and

**(iii)** Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

## B. "Watercraft Liability"

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

**(1)** Less than 26 feet in overall length; or

**(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 25 total horsepower or less;

**(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

**(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(i)** You declare them at policy inception; or

**(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

## C. "Aircraft Liability"

This policy does not cover "aircraft liability".

## D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

© Insurance Services Office, Inc., 2010

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

**b.** This Exclusion **E.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees.

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

    **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

    **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

        **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

        **(2)** Where the liability of others is assumed by you prior to an "occurrence";

    unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the:

        **(1)** Nuclear Energy Liability Insurance Association;

        **(2)** Mutual Atomic Energy Liability Underwriters;

        **(3)** Nuclear Insurance Association of Canada;

    or any of their successors; or

    **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

    **a.** Repay; or

    **b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F – Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

    **a.** Occurs off the "insured location"; and

    **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**3.** From any:

    **a.** Nuclear reaction;

    **b.** Nuclear radiation; or

    **c.** Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

    **a.** To the extent of any amount recoverable under Section I;

    **b.** Caused intentionally by an "insured" who is 13 years of age or older;

    **c.** To property owned by an "insured";

    **d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

    **e.** Arising out of:

    **(1)** A "business" engaged in by an "insured";

    **(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

    **(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

    This Exclusion **e.(3)** does not apply to a "motor vehicle" that:

    **(a)** Is designed for recreational use off public roads;

    **(b)** Is not owned by an "insured"; and

    **(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

    **a.** "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

    **b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

    **(1)** Is elected by the members of a corporation or association of property owners; and

    **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph **I.** Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

    **a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

    **b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

 © Insurance Services Office, Inc., 2010

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

    **a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

    **b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

    **c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

        **(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

        **(2)** If the risk has changed substantially since the policy was issued.

        This can be done by letting you know at least 30 days before the date cancellation takes effect.

    **d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

© Insurance Services Office, Inc., 2010

**2.** "Insured" includes:

    **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

**b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASSIGNMENT OF BENEFITS FULLY PROHIBITED

This endorsement changes coverage provided by the following:
**HOMEOWNERS 3 – SPECIAL FORM HO 00 03 05 11**
**HOMEOWNERS 5 – COMPREHENSIVE FORM HO 00 05 05 11**
**SPECIAL PROVISIONS – FLORIDA HO SW 01 09**

**This Policy restricts in whole your right to execute an "assignment agreement".**

"Assignment agreement" means any instrument by which post-loss benefits under this Policy are assigned or transferred, or acquired in any manner, in whole or in part, to or from a person providing services to protect, repair, restore, or replace property or to mitigate against further damage to the property.

**SECTIONS I AND II – CONDITIONS**
**E. Assignment** is deleted and replaced by the following:

**E. Assignment**
Assignment of this Policy will not be valid unless we give our written consent.

Under SECTION I – CONDITIONS of this Policy, post-loss insurance benefits may not be assigned to a third party under any "assignment agreement". There is no coverage for **any** liabilities, damages, losses, and costs, including, but not limited to, attorney fees, that arise out of the "assignment agreement" being prohibited due to this endorsement.

 All other provisions of this Policy apply.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

    © ISO Properties, Inc., 2004

HOMEOWNERS
HO 06 48 10 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RESIDENCE PREMISES
# DEFINITION ENDORSEMENT

**DEFINITIONS**

Definition **B.11.** is replaced by the following:

**11.** "Residence premises" means:

**a.** The one-family dwelling where you reside;

**b.** The two-, three- or four-family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

on the inception date of the policy period shown in the Declarations and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

All other provisions of this Policy apply.

© Insurance Services Office, Inc., 2015

POLICY NUMBER: AL91-006712-00

**HOMEOWNERS**
**HO 04 95 01 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITED WATER BACK-UP AND
# SUMP DISCHARGE OR OVERFLOW COVERAGE

### SCHEDULE

| Limited Water Back-up And Sump Discharge Or Overflow Coverage Limit Of Liability: | $ |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section I – Property Coverages**

  **E. Additional Coverages**

    The following coverage is added:

    **Limited Water Back-up And Sump Discharge Or Overflow Coverage**

    We will pay up to the Limit Of Liability shown in the Schedule for direct physical loss, not caused by the negligence of an "insured", to property covered under Section I caused by water, or waterborne material, which:

    **1.** Originates from within the dwelling where you reside and backs up through sewers or drains; or

    **2.** Overflows or is discharged from a:

      **a.** Sump, sump pump; or

      **b.** Related equipment;

    even if such overflow or discharge results from mechanical breakdown or power failure. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown or power failure.

    This coverage does not increase the limits of liability for Coverage **A, B, C** or D stated in the Declarations.

**B. Section I – Perils Insured Against**

  With respect to the coverage provided under this endorsement, Paragraphs:

  **A.2.c.(6)(b)** in Form **HO 00 03;**

  **A.2.e.(2)** in Form **HO 00 05;**

  **2.j.(2)** in Endorsement **HO 05 24;**

  **3.j.(2)** in Endorsement **HO 17 31;** and

  **2.c.(6)(b)** in Endorsement **HO 17 32;**

  are replaced by the following:

  Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**C. Section I – Exclusions**

  With respect to the coverage provided under this endorsement:

  **1.** The **Water** Exclusion is replaced by the following:

    **Water**

    This means water which backs up through sewers or drains, or overflows or is discharged from a sump, sump pump or related equipment, as a direct or indirect result of:

    **a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

    **b.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

    **c.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **C.1.a.** and **C.1.b.** of this exclusion.

    This exclusion applies regardless of whether any of the above, in Paragraphs **C.1.a.** through **C.1.c.,** is caused by an act of nature or is otherwise caused.

    This exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

    However, direct loss by fire, explosion or theft resulting from any of the above, in Paragraphs **C.1.a.** through **C.1.c.,** is covered.

  **2.** The **Power Failure** Exclusion does not apply.

  All other provisions of this policy apply.

© Insurance Services Office, Inc., 2013

**HOMEOWNERS**
**HO SW FL 05X 04 22**

POLICY NUMBER: AL91-006712-00

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ANIMAL LIABILITY EXCLUSION

**SECTION II – EXCLUSIONS**

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

The following exclusion is added:

**9.  Animal Liability Exclusion**

We will NOT cover any damages caused by any of the prohibited animals identified below that are owned or kept, including temporary supervision, by any "insured", resident or tenant of your household, or guest of any preceding persons whether or not the injury occurs on your premises or any other location. This means that we will NOT cover any "bodily injury" or "property damage" for which an "insured" is legally liable that arises out of or is caused, in whole or in part, by any of the prohibited animals identified below owned or kept, including temporary supervision, by any "insured", resident, tenant, or guest whether or not the injury occurs on your premises or any other location. Prohibited animals include:

a.  The following types of dogs, including pure breeds or a mix breed of any of the below listed breeds with any other breed, regardless of whether it is listed below or not, and regardless of the percentage mix or whether the mix is known or unknown to the "insured" of:
1.  Any Pit Bull or variety of Pit Bulls;
2.  Pit Bull Terriers;
3.  American Staffordshire Terriers;
4.  American Pit Bull Terriers;
5.  Staffordshire Bull Terriers;
6.  Doberman Pinschers;
7.  Rottweilers;
8.  Chows;
9.  Presa Canarios; or
10.  Wolf hybrids;
b.  Wolves;
c.  Dogs that have been trained to attack persons, property or other animals;
d.  Dogs that have been trained to guard persons or property;
e.  Any dog used in any manner, as a fighting dog or bred specifically for fighting;
f.  Any dog with a prior history of biting or attacking persons, property or other animals as established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency; and
g.  Any dog that has not had inoculations as required by law.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

POLICY NUMBER: AL91-006712-00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ANIMAL LIABILITY SUBLIMIT ENDORSEMENT

Coverage under Section II Liability Coverage, Coverage E will apply to all "bodily injury" or "property damage" for which an "insured" is liable, and that is caused, in whole or in part, by any animal(s) owned or kept by any "insured".  Your coverage under Section II Liability Coverage, Coverage E is subject to the exclusions and conditions listed in your policy, except to the extent that they are modified by this Endorsement.

The limit of liability that is shown below under Sublimit of Liability is the total limit of coverage for this Endorsement for all activity or conduct of any animal(s) owned or kept by any "insured".

This endorsement changes your policy as follows:

**SECTION II – LIABILITY COVERAGE**

Under **A.**        **Coverage E – Personal Liability**

Paragraph **A. 1.** is replaced by:

    **A.1.**        Pay up to our limit of liability for the damages for which an "insured" is legally liable, except for where the Sublimit of Liability applies. Damages will include all prejudgment interest awarded against an "insured"; and

Paragraph **C.** is added as follows:

    **C.  SUBLIMIT OF LIABILITY**
    The **Sublimit of Liability** which is shown below is the total limit for each loss, and all losses in aggregate, for any "bodily injury" or "property damage" that arises out of or is caused, in whole or in part, by "Animal Liability".
    1.  **Animal Liability** means all "bodily injury" or "property damage" for which an "insured" is legally liable that arises out of or is caused, in whole or in part, by any animal(s) owned or kept by any "insured".
    2.  Under **Coverage E,** we will pay up to the **Sublimit of Liability** that is shown below for any "bodily injury" or "property damage" that arises out of or is caused, in whole or in part, by "Animal Liability". All the other provisions and exclusions in your policy still apply.
    3.  **Sublimit of Liability - Coverage E**: $50,000.00
       a.  This is the most we will pay regardless of the number of locations that are insured under the policy that this endorsement is attached to.
       b.  This is the most we will pay regardless of the number of persons who are injured.
       c.  This is the most we will pay regardless of the number of persons whose property is damaged.
       d.  This is the most we will pay regardless of the number of "insured(s)" under the policy.
       e.  This is the most we will pay regardless of the number of "occurrences" or claims made.

This sublimit does not increase the **Section II Coverage E** limit of liability in any way.

**Section II Condition 2. Severability of Insurance** does not apply to the aggregate Sublimit of Liability that is described in this Endorsement.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

POLICY NUMBER: AL91-006712-00

**HOMEOWNERS**
**HO 03 51 05 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALENDAR YEAR HURRICANE DEDUCTIBLE (PERCENTAGE) WITH SUPPLEMENTAL REPORTING REQUIREMENT – FLORIDA

**WARNING:**  **IF THIS POLICY PROVIDES AN INFLATION GUARD OPTION, THE ACTUAL CALENDAR YEAR HURRICANE DEDUCTIBLE AMOUNT AT THE TIME OF LOSS MAY BE HIGHER THAN THE DOLLAR AMOUNT SHOWN IN THE DECLARATIONS.**

**SCHEDULE**

| | |
|---|---|
| **Calendar Year Hurricane Deductible Percentage Amount:** | **%** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Loss By Windstorm During A Hurricane**

With respect to Paragraphs **B.** and **C.**, coverage for loss caused by the peril of windstorm during a hurricane which occurs anywhere in the state of Florida includes loss to:

**1.** The inside of a building; or

**2.** The property contained in a building caused by:

    **a.** Rain;

    **b.** Snow;

    **c.** Sleet;

    **d.** Hail;

    **e.** Sand; or

    **f.** Dust;

if the direct force of the windstorm damages the building, causing an opening in a roof or wall and the rain, snow, sleet, hail, sand or dust enters through this opening.

**B. Calendar Year Hurricane Deductible Described**

A hurricane deductible issued by us or another insurer in our insurer group:

**1.** Can be exhausted only once during each calendar year; and

**2.** Applies to loss to covered property caused by one or more hurricanes during each calendar year.

The dollar amount of the calendar year hurricane deductible is determined by multiplying the Coverage **A** Limit Of Liability shown in the Declarations by the percentage amount shown in the Schedule above.

A minimum deductible of $500 applies.

**C. Application Of Calendar Year Hurricane Deductible**

**1.** In the event of the first windstorm loss caused by a single "hurricane occurrence" during a calendar year, we will pay only that part of the total of all loss payable under Section **I –** Property Coverages that exceeds the calendar year hurricane deductible stated in the Schedule.

**2.** With respect to a windstorm loss caused by the second, and each subsequent, "hurricane occurrence" during the same calendar year, we will pay only that part of the total of all loss payable under Section **I –** Property Coverages that exceeds the greater of:

    **a.** The remaining dollar amount of the calendar year hurricane deductible; or

    **b.** The deductible that applies to fire that is in effect at the time of the loss.

**3.** With respect to any one loss caused by a "hurricane occurrence", if:

    **a.** Covered property is insured under more than one policy issued by:

        **(1)** Us; or

        **(2)** Another insurer in our insurer group;

        and

    **b.** At the time of loss, different hurricane deductibles apply to the same property under such policies;

then the hurricane deductible applicable under all such policies, used to determine the total of all loss payable under Section **I –** Property Coverages, shall be the highest amount stated in any one of the policies.

**4.** When a renewal policy is issued by us or an insurer in our insurer group, or we issue a policy that replaces one issued by us or an insurer in our insurer group, and the renewal or replacement policy takes effect on a date other than January 1 of a calendar year, the following provisions apply:

  **a.** If:

    **(1)** The renewal or replacement policy provides a lower hurricane deductible than the prior policy; and

    **(2)** You incurred loss from a hurricane under the prior policy in that same calendar year;

    the lower hurricane deductible will not take effect until January 1 of the following calendar year.

  **b.** If:

    **(1)** The renewal or replacement policy provides a lower hurricane deductible than the prior policy; and

    **(2)** You have not incurred a hurricane loss in that same calendar year;

    the lower hurricane deductible will take effect on the effective date of the renewal or replacement policy.

  **c.** If the renewal or replacement policy provides a higher hurricane deductible than the prior policy, the higher hurricane deductible:

    **(1)** Will take effect on the effective date of the renewal or replacement policy; and

    **(2)** Shall be used to calculate the remaining dollar amount of the hurricane deductible.

**5.** We require that you promptly report any windstorm loss caused by a "hurricane occurrence" that is below the hurricane deductible so that we may consider the amount of such loss when adjusting claims for subsequent "hurricane occurrences" that occur during the calendar year.

**D. Loss By Windstorm That Is Not A Declared Hurricane**

Refer to the policy Declarations for the deductible that applies to windstorm loss if the circumstances of the loss described above do not apply.

All other provisions of this policy apply.

# DEDUCTIBLE OPTIONS NOTICE

We offer standard deductibles of $1,000 for **All Other Perils** and 2% of the **Coverage A** limit for **Hurricanes**.

A mandatory Sinkhole deductible may apply in some policies and will be shown in your Declarations if applicable.

Your current selected deductibles will continue unless you elect to make a change. Not all **Hurricane** deductible options may be available due to your dwelling coverage amount.

We offer the opportunity for you to:

1. Buy lower deductibles for an additional premium; or

2. Select higher deductibles for a premium credit.

If your policy does not exclude coverage for the peril of Windstorm Or Hail, there are various combinations **of All Other Peril** and **Hurricane** deductibles available to you:

**A. All Other Peril** deductible options are $500, $1,000, $2,500, $5,000, $10,000, $25,000 or $50,000.

**B. Hurricane** deductible options are**:**

1. A flat dollar amount of $500; or

2. A percentage of the **Coverage A** limit shown on your Declarations of 1%, 2%, 3%, 5% or 10%.

**\*\*Note**: If you have had a hurricane loss under this policy or under one issued by a member of our company group during the calendar year, a lower selected hurricane deductible will not take effect until Jan. 1 of the following calendar year.

If you select either a 5% of the **Coverage A** limit or 10% of the **Coverage A** Limit **Hurricane** deductible, we recommend you check with your mortgage company to ensure compliance with the terms of your mortgage obligations.

This form does not amend or change the terms of coverage, limits or conditions under your Policy.

Please contact your agent if you have any questions or to change your deductible.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DIRECT REPAIR DEDUCTIBLE SAVINGS PROGRAM ENDORSEMENT

This endorsement changes coverage provided by the following:

**HO SW 18 REASONABLE EMERGENCY MEASURES AND DUTIES AFTER LOSS**

**HO SW 01 09 SPECIAL PROVISIONS – FLORIDA**

**HO 00 03 05 11 HOMEOWNERS 3 – SPECIAL FORM**

THE PROGRAM DESCRIBED IN THIS ENDORSEMENT ALLOWS US AT OUR OPTION, AND WITH YOUR CONSENT, TO SELECT A "PREQUALIFIED VENDOR" TO MAKE COVERED REPAIRS TO YOUR DWELLING OR OTHER STRUCTURES.

## AGREEMENT

You agree that in the event of a covered loss to your dwelling or other structures on the "residence premises," other than a hurricane loss or sinkhole loss we, at our option, and with your consent, may select a "Prequalified Vendor" to make covered repairs to your dwelling and other structures, covered under **COVERAGE A** or **COVERAGE B** when damage or loss results from a covered peril.

If we so elect to repair your covered property, a deductible credit equal to 10% of your All Other Perils deductible stated in the Declarations will be applied to reduce your deductible obligation at loss settlement. The credit will apply to reduce your deductible obligation at loss settlement only when the amount of a covered loss exceeds the applicable deductible. This credit is subject to a maximum of $2,000. This credit does not reduce the applicable deductible under the Policy.

In addition, the following provisions of the policy and its endorsements where applicable, are changed:

The following is added:

In the event of a direct physical loss to property covered under Coverage A or Coverage B located on the "residence premises", we will at our option and with your consent provide you an estimate of covered loss and a "Prequalified Vendor" to repair, replace or rebuild the damaged property as shown in the estimate of covered loss, as provided under this endorsement and your Policy.

Your consent provided on or after reporting a claim of loss or damage and the provisions of this endorsement are only for that reported claim of loss or damage. The provisions of this endorsement do not apply to any subsequent claim of loss or damage unless we exercise our option to utilize the Program

and you provide another consent as described above.

1.  The Program will include an original estimate of covered loss we or the "Prequalified Vendor" provide as described above and as necessary, a revised estimate(s) describing any additional covered loss or damages discovered during the repair, replacement or rebuilding of property covered under Coverage A or Coverage B that are not included in the original estimate of covered loss. Together, they are your estimate of covered loss.

2.  Regarding covered loss or damage to property covered under Coverage A or Coverage B, the following applies:

    a.  As a participant in the Program under this endorsement, you will enter directly into a contract with the "Prequalified Vendor" for the repairs, replacement or rebuilding of the damaged property covered under Coverage A or Coverage B included in the estimate of covered loss that we or the "Prequalified Vendor" provide you under this endorsement.

    b.  Payment under the contract described in paragraph 2.a. above will be made to the "Prequalified Vendor" as described in SECTION I – CONDITIONS, J. Loss Payment, for the repairs, replacement or rebuilding of damaged property covered under Coverage A or Coverage B in the estimate of covered loss, less any applicable deductible.

## DEFINITIONS

The following is added:

"Prequalified Vendor" means a person, entity, or company, including their employees, agents, representatives and general or specialty contractors who is a member of the network engaged by us to repair or replace damaged property.

## SECTION I – PROPERTY COVERAGES

## E. ADDITIONAL COVERAGES

The following is added to **2. Reasonable Emergency Measures (Form HO SW 18):**

    **f.**   If a peril causing a loss and related damage are covered and repairs are necessary to protect covered property from further damage, you must notify us before authorizing or commencing repairs so we, at our option and with your consent, may select a "Prequalified Vendor" to make the covered repairs.

    If you do not so notify us and use someone other than a "Prequalified Vendor", the deductible credit will not apply and our obligation for repairs made to protect the covered property from further damage is limited to the lesser of the  following:

    **(1)**   The amount in paragraph **a.** under 2. Reasonable Emergency Measures; or

    **(2)**   The amount we would have paid to a "Prequalified Vendor" selected by us for necessary repairs made solely to protect the covered property from further damage.

## SECTION I – CONDITIONS

### C. Duties After Loss

Under **C. Duties After Loss** (**Form HO SW 18**)**,** the following is added under paragraph **5.**:

    **c.** If repairs to the property are required, or if the services of a  "Prequalified  Vendor" are required to protect the property from further damage, you must notify us before authorizing or commencing the repairs or the services so we, at our option, and with your consent, may select a "Prequalified Vendor" to make covered repairs or perform the services.

    If you do not notify us prior to authorizing or commencing the repairs or services and allow us at our option, and with your consent, to select a "Prequalified Vendor" for the repairs or services, the deductible credit will not apply and our obligation for the repairs or services is limited to the lesser of the following:

        i. The reasonable cost you incur for necessary repairs or for services solely to protect covered property from further damage; or

        ii. The amount we would have paid to a "Prequalified Vendor" selected by us for necessary repairs or for services solely to protect covered property from further damage.

The following is added to **C. Duties After Loss** (**Form HO SW 18**):

**11.** You must permit us to take samples of the damaged and undamaged property for inspection, testing and analysis.

**12.** If we elect to make repairs under this policy, or our "Prequalified Vendor" has made repairs to your property pursuant to the Program under this endorsement, you must notify us in writing if you dispute any part of the repair and:

    a. Allow us to re-inspect your property; and

    b. Allow us to make any further repairs to be specifically agreed upon with us, in writing.

**13.** You must provide access to the property and execute any necessary municipal, county or other governmental documentation or permits for repairs to be undertaken.

**14.** You must execute all work authorizations to allow our "Prequalified Vendors" and related parties entry to the property.

**15.** You must otherwise cooperate with repairs to the property.

### F. Mediation Or Appraisal

Paragraph **2.** (Form **HO SW 01 09**) is deleted and replaced by the following:

**2.** If you and we fail to agree on the amount of loss, either party may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:

    **a.** Pay its own appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

If you and we fail to agree on the amount of covered loss which includes scope of damages:

    **a.** Our payment obligation under any appraisal award is the cost determined by the "Prequalified Vendor" in the revised estimate of loss prepared by the "Prequalified Vendor" in response to the Appraisal award; and

    **b.** You or we must first give the other an opportunity to seek resolution through Appraisal before a suit may be filed related to this endorsement.

## I. Our Option

The following Paragraph **I. Our Option** (Form **HO SW 01 09**) is deleted and replaced by the following:

    **I. Our Option**

    **1.** Your consent to participate in the Program under this endorsement constitutes, for the loss or damage you have reported to us, your waiver of our requirement to provide you written notice within 30 days after we receive your signed, sworn proof of loss.

    **2.** Our right to repair or replace, and our decision to do so, is a material part of this contract and under no circumstances relieves you or us of our mutual duties and obligations under this contract. Any contract entered between you and our "Prequalified Vendor" to perform repairs or services for any loss attributed to a covered peril shall not interfere with this right.

## J. Loss Payment

The following is added to paragraph **J. Loss Payment** (Form **HO SW 01 09**):

    **4.** We will make payment directly to the "Prequalified Vendor" designated by us, less the amount of your deductible as reduced by any applicable deductible credit; or

    **5.** If you choose not to use our "Prequalified Vendor" to perform the covered repairs, we will pay you the same amount the "Prequalified Vendor" under this endorsement would have received less any applicable deductible as final payment for the loss.

    **6.** You will be responsible for paying to the "Prequalified Vendor" the amount of your deductible less any applicable deductible credit.

## WITHDRAWAL

    **1.** If you have consented to participate, you may withdraw your consent by notifying us any time prior to you signing any contract(s) or authorization(s) provided by the "Prequalified Vendor" to make covered repairs under this endorsement; or

    **2.** If you or your representative notify us or the "Prequalified Vendor" to stop making covered repairs, or you or your representative prevent the "Prequalified Vendor" from making covered repairs, this constitutes withdrawal of your consent to the services provided under this endorsement.

    **3.** Upon the withdrawal of your consent, this endorsement no longer applies and all other provisions of your Policy apply.

All other provisions of this policy apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM ENDORSEMENT

This Endorsement modifies insurance provided under the following:
ALL COVERAGE PARTS INCLUDED IN THIS POLICY

This policy is subject to a minimum earned premium. All cancellation provisions of this policy are amended by the following:

If this policy is **canceled**, we will send the (first) Named Insured any premium refund due.

    a.  **If we cancel**, the refund will be generated on a pro-rata of gross annual premium basis (including any additional premiums added by endorsement).

    b.  If the policy is **canceled at the request of the (first) Named Insured**:

        i.  If the policy has been in effect any time during the period of June 1 to and including November 30, the premium charged for the location(s) shall be subject to a **Minimum Earned Premium of 75%** of the gross annual premium (including any additional premiums added by endorsement). This Minimum Earned Premium is the least amount of premium we shall retain as earned premium regardless of term.

        ii.  If the policy has **NOT** been in effect any time during the period of June 1 to and including November 30, the premium charged for the location(s) shall be subject to a **Minimum Earned Premium of 25%** of the gross annual premium (including any additional premiums added by endorsement). This Minimum Earned Premium is the least amount of premium we shall retain as earned premium regardless of term.

        iii.  Policy Fees are fully earned, regardless of the term.

        iv.  Cancellation for non-payment of premium will be considered cancellation at the request of the (first) Named Insured.

    c.  All refunds If the policy is **canceled at the request of the (first) Named Insured** will be determined as follows:

        i.  If at the time of cancellation, the earned premium is GREATER than the Minimum Earned Premium, the refund will be pro-rata return of the gross annual premium.

        ii.  If at the time of cancellation, the earned premium is EQUAL TO or LESS than the Minimum Earned Premium, no refund will be due.

**All other terms and conditions of this policy remain unchanged.**

POLICY NUMBER: AL91-006712-00

HOMEOWNERS
HO 03 33 05 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI, WET OR DRY ROT, OR BACTERIA INCREASED AMOUNT OF SECTION I – PROPERTY COVERAGE – FLORIDA

## SCHEDULE

| | |
|---|---|
| The limit of liability selected applies to loss or costs payable under the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage. | |
| **Section I – Property Coverage Limit Of Liability For The Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria** | **$10,000** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**SECTION I – PROPERTY COVERAGES**

**E. Additional Coverages**

**"Fungi", Wet Or Dry Rot, Or Bacteria**

Paragraph **a.** is replaced by the following:

**a.** We will pay up to the amount in the Schedule for:

**(1)** Loss payable under Section **I** – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

**(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section **I** – Property Coverages;

**(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

**(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

Paragraph **c.** is replaced by the following:

**c.** $50,000 is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

**(1)** Number of locations insured; or

**(2)** Number of claims made.

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REASONABLE EMERGENCY MEASURES AND DUTIES AFTER LOSS

Under **Section I – Property Coverages E. Additional Coverages, 2. Reasonable Repairs** is deleted and replaced in its entirety by the following:

**2. Reasonable Emergency Measures**.

**a.** We will pay up to the greater of $3,000 or 1% of your Coverage A limit of liability for the reasonable costs incurred by you for necessary measures taken solely to protect covered property from further damage, when the damage or loss is caused by a Peril Insured Against.

**b.** We will not pay more than the amount in **a.** above, unless we provide you approval within 48 hours of your request to us to exceed the limit in a. above. In such circumstance, we will pay only up to the additional amount for the measures we authorize.

If we fail to respond to you within 48 hours of your request to us and the damage or loss is caused by a Peril Insured Against, you may exceed the amount in **a.** above only up to the cost incurred by you for the reasonable emergency measures necessary to protect the covered property from further damage.

**c.** If however, form **HO 03 51** is part of your Policy and a covered loss occurs during a hurricane as described in form **HO 03 51**, the amount we pay under this additional coverage is not limited to the amount in **a.** above.

**d.** A reasonable measure under this Additional Coverage E.2. may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect.

**e.** This coverage does not:

   **(1)** Increase the limit of liability that applies to the covered property;

   **(2)** Relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I – CONDITIONS,C. Duties After Loss

   **(3)** Pay for property not covered, or for repairs resulting from a peril not covered, or for loss excluded in this Policy.

In form HO 00 03 and HO SW 01 09, **Section I – Conditions, C. Duties After Loss** is deleted in its entirety and replaced by the following:

**C. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or your insurance agent.

   Except for Reasonable Emergency Measures taken under Additional Coverage E.2., there is no coverage for repairs that begin before the earlier of:

   **a.** 72 hours after we are notified of the loss;
   **b.** The time of loss inspection by us; or
   **c.** The time of other approval by us;

2. **a.** To the degree reasonably possible, retain the damaged property; and
   **b.** Allow us to inspect, subject to 2.a. above, all damaged property prior to its removal from the "residence premises";

3. Notify the police in case of loss by theft;

4. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

5. Protect the covered property from further damage. The following must be performed:

   **a.** Take reasonable measures that are necessary to protect the covered property from further damage, as provided under Additional Coverage E.2.

   A reasonable emergency measure under 5.a. above may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect;

   **b.** Keep an accurate record of repair expenses;

6. Cooperate with us in the investigation of a claim;

7. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

8. As often as we reasonably require:

    **a.** Show the damaged property to extent reasonably possible;
    **b.** Provide us with records and documents we request and permit us to make copies; and
    **c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

**9.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    **a.** The time and cause of loss;
    **b.** The interests of all "insureds" and all others in the property involved and all liens on the property;
    **c.** Other insurance which may cover the loss;
    **d.** Changes in title or occupancy of the property during the term of the policy;
    **e.** Specifications of damaged buildings and detailed repair estimates;
    **f.** The inventory of damaged personal property described in 6. above;
    **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and
    **h.** Evidence or affidavit that supports a claim under Additional Coverage E.6. Credit Card, Fund Transfer Card, Forgery and Counterfeit Money under Section I - Property Coverages, stating the amount and cause of loss.

**10.** A claim, supplemental claim, or reopened claim for loss or damage caused by the peril of windstorm or hurricane is barred unless notice of the claim, supplemental claim, or reopened claim is given to us in accordance with the terms of the Policy within 3 years after the date the hurricane first made landfall in Florida or the windstorm caused the covered damage.

A supplemental claim or reopened claim means any additional claim for recovery from us for losses from the same hurricane or windstorm which we have previously adjusted pursuant to the initial claim.

All other provisions of this policy apply.

POLICY NUMBER: AL91-006712-00

HOMEOWNERS
HO 03 34 05 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA
# SECTION II – LIABILITY COVERAGE – FLORIDA

## SCHEDULE

| | |
|---|---|
| Section II – Coverage E Aggregate Sublimit Of Liability For "Fungi", Wet Or Dry Rot, Or Bacteria | $ 50,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**SECTION II – CONDITIONS**

Condition **A. Limit Of Liability** is replaced by the following:

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened:

1. Inhalation of;
2. Ingestion of;
3. Contact with;
4. Exposure to;
5. Existence of; or
6. Presence of;

any "fungi", wet or dry rot, or bacteria will not be more than the Section **II** – Coverage **E** Aggregate Sublimit Of Liability shown in the Schedule for "Fungi", Wet Or Dry Rot, Or Bacteria. This is the most we will pay regardless of the:

1. Number of locations insured under the policy to which this endorsement is attached;
2. Number of persons injured;
3. Number of persons whose property is damaged;
4. Number of "insureds"; or
5. Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in Condition **A.** Limit Of Liability of this endorsement, Condition **B. Severability Of Insurance** is replaced by the following:

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** – Conditions, **A.** Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

© Insurance Services Office, Inc., 2012

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

  **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

  **2.** Any other activity engaged in for money or other compensation, except the following:

    **a.** One or more activities:

      **(1)** Not described in **b.** through **d.** below; and

      **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

    **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

  **1.** That an "insured" engages in for money or other compensation; and

  **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  **1.** Described in **A.2.** above, and

  **2.** Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  **1.** Does not provide:

    **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section **II** – Exclusions;

    **b.** Coverage, under Section **I,** for other structures from which any "business" is conducted; and

  **2.** Limits Section **I** coverage, under Coverage **C** – Special Limits of Liability, for "business" property:

    **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

    **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (**f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).

 Copyright, Insurance Services Office, Inc., 1999

# ORDINANCE OR LAW COVERAGE
## Notification Form

Florida Law requires insurers to provide Ordinance or Law coverage on all Homeowners policies unless the insured rejects this coverage. The standard Homeowners 3 – Special Form insuring agreement contains Ordinance or Law limits of 10% of Coverage A.  At the time of purchase you may have amended this limit.

You have the option to select Ordinance or Law coverage limits of 0%, 10%, 25% or 50% of Coverage **A** as displayed on your declaration page.

Ordinance or Law coverage extends coverage to increases in the cost of construction, repair or demolition of your dwelling or other structures on your premises that result from enforcement of ordinances, laws or building codes.

If you are interested in changing your coverage, return this signed form to your insurance agent whose name, address and telephone number appear on the policy declaration page. If no selection is made on a new business policy, your policy will automatically provide a 25% limit. If no selection is made for a renewal policy, the limit will remain as shown on the policy declaration page.

Please read the four options below, check the statement that matches your coverage selection and sign your name where noted.

[ ] I wish to select 10% Ordinance or Law coverage limit and I reject the limits of 0%, 25% and 50%.

[ ] I wish to select 25% Ordinance or Law coverage limit and I reject the limits of 0%, 10% and 50%.

[ ] I wish to select 50% Ordinance or Law coverage limit and I reject limits of 0%, 10% and 25%.

[ ] I reject Ordinance or Law coverage at the 10% limit, the 25% limit and the 50% limit. I acknowledge that I will not have any Ordinance or Law coverage.

Please note that if you are increasing your ordinance or law coverage an additional premium will apply.

Insured:

Policy Number:

Signature: _____

Date: _____

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ORDINANCE OR LAW AMENDED AMOUNT OF COVERAGE**

SCHEDULE*

| |
|---|
| New Total Percentage Amount: <br><br> 25.00% |
| *Entry may be left blank if shown elsewhere in this policy for this coverage. |

SECTION I – PROPERTY COVERAGES ADDITIONAL COVERAGES

11. Ordinance Or Law

The total limit of liability that applies:

a. To Coverage A is amended from 10% to the percentage amount shown in the Schedule above.

All other provisions of this policy apply.

HOMEOWNERS
HO 24 83 05 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PERSONAL INJURY COVERAGE – FLORIDA

## DEFINITIONS

The following definition is added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

**1.** False arrest, detention or imprisonment;

**2.** Malicious prosecution;

**3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**4.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**5.** Oral or written publication, in any manner, of material that violates a person's right of privacy.

## SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability**

The following is added to **Coverage E – Personal Liability:**

**Personal Injury Coverage**

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

## SECTION II – EXCLUSIONS

With respect to the coverage provided by this endorsement, **Section II – Exclusions** is replaced by the following:

This insurance does not apply to:

**1.** "Personal injury":

**a.** Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

**b.** Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

**c.** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**d.** Arising out of a criminal act committed by or at the direction of an "insured";

**e.** Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;

**f.** Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

**g.** Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business".

This exclusion does not apply to:

**(1)** The rental or holding for rental of an "insured location":

    **(a)** On an occasional basis if used only as a residence;

    **(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

    **(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**h.** Arising out of civic or public activities performed for pay by an "insured";

**i.** To you or an "insured" as defined under Definition **5.a.** or **5.b.;**

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

**(1)** Repay; or

**(2)** Share damages with;

another person who may be obligated to pay damages because of "personal injury" to an "insured";

**j.** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed; or

**k.** Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

**2.** Any loss, cost or expense arising out of any:

**a.** Request, demand or order that an "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, "fungi", wet or dry rot, or bacteria; or

**b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants, "fungi", wet or dry rot, or bacteria.

## SECTION II – ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, Paragraph **D. Loss Assessment** is replaced by the following:

**D. Loss Assessment**

We will pay up to $1,000 for your share of loss assessment charged against you, as an owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of "personal injury" not excluded under this endorsement.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of "personal injury".

## SECTION II – CONDITIONS

With respect to the coverage provided by this endorsement, Section **II – Condition I. Policy Period** does not apply and Conditions **A. Limit Of Liability, B. Severability Of Insurance** and **C. Duties After "Occurrence"** are replaced by the following:

**A. Limit Of Liability**

Our total liability under Personal Injury Coverage for all damages resulting from any one offense will not be more than the Limit Of Liability shown in the Declarations for Coverage **E.** This limit is the same regardless of the number of "insureds", claims made or suits brought.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

**C. Duties After Offense**

In the event of a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

    **a.** The identity of the policy and "named insured";

    **b.** Reasonably available information on the time, place and circumstances of the offense; and

© Insurance Services Office, Inc., 2012

   **c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the offense;

**4.** At our request, help us:

   **a.** To make settlement;

   **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   **c.** With the conduct of suits and attend hearings and trials; and

   **d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "personal injury".

All other provisions of this policy apply.

**HOMEOWNERS**
**HO 23 86 05 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT – FLORIDA

**A. Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   **a.** Coverage **C;** and

   **b.** If covered in this policy:

      **(1)** Awnings, outdoor antennas and outdoor equipment; and

      **(2)** Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   **a.** Jewelry;

   **b.** Furs and garments:

      **(1)** Trimmed with fur; or

      **(2)** Consisting principally of fur;

   **c.** Cameras, projection machines, films and related articles of equipment;

   **d.** Musical equipment and related articles of equipment;

   **e.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      **(1)** Pens or pencils;

      **(2)** Flasks;

      **(3)** Smoking implements; or

      **(4)** Jewelry; and

   **f.** Golfer's equipment, meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity, which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles, whose age or history contributes to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in **A.** above.

1. We will pay no more than the least of the following amounts:

   **a.** Replacement cost at the time of loss without deduction for depreciation;

   **b.** The full cost of repair at the time of loss;

   **c.** The limit of liability that applies to Coverage **C,** if applicable;

   **d.** Any applicable special limits of liability stated in this policy; or

   **e.** For loss to any item described in **A.2.a. – f.** above, the limit of liability that applies to the item.

2. We will settle the loss as follows:

   **a.** If the Mobilehome Endorsement is not made a part of this policy, we will settle the loss as noted in Paragraph **C.1.** above whether or not actual repair or replacement is complete.

**b.** If the Mobilehome Endorsement is made a part of this policy:

**(1)** If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value of the loss until the actual repair or replacement is complete.

**(2)** You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged property.

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL EXTERIOR PAINT OR WATERPROOFING EXCLUSION - SEACOAST

**Exclusion**

We will not pay for loss caused by windstorm or hail, including windstorm during a hurricane, to:

1. Paint; or
2. Waterproofing material;

applied to the exterior of any building or structure covered under this policy, unless the building or structure to which such loss occurs also sustains other loss by windstorm or hail in the course of the same storm event. But such coverage applies only if windstorm or hail is a covered Peril Insured Against under Section I.

All other provisions of this policy apply.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ROOFING MATERIALS PAYMENT SCHEDULE – FLORIDA

For a reduction in premium, your policy is changed as follows:

| Roofing Materials Payment Schedule | | | | | | |
|---|---|---|---|---|---|---|
| Age of Roof | All Composition Shingle | Slate | Concrete/Clay Tile | Wood | Metal | All Other Roofing Materials |
| 0 | 100% | 100% | 100% | 100% | 100% | 100% |
| 1 | 96% | 99% | 98% | 98% | 99% | 96% |
| 2 | 92% | 98% | 96% | 96% | 98% | 92% |
| 3 | 88% | 97% | 94% | 94% | 97% | 88% |
| 4 | 84% | 96% | 92% | 92% | 96% | 84% |
| 5 | 80% | 95% | 90% | 90% | 95% | 80% |
| 6 | 76% | 94% | 88% | 88% | 94% | 76% |
| 7 | 72% | 93% | 86% | 86% | 93% | 72% |
| 8 | 68% | 92% | 84% | 84% | 92% | 68% |
| 9 | 64% | 91% | 82% | 82% | 91% | 64% |
| 10 | 60% | 90% | 80% | 80% | 90% | 60% |
| 11 | 56% | 89% | 78% | 78% | 89% | 56% |
| 12 | 52% | 88% | 76% | 76% | 88% | 52% |
| 13 | 48% | 87% | 74% | 74% | 87% | 48% |
| 14 | 44% | 86% | 72% | 72% | 86% | 44% |
| 15 | 40% | 85% | 70% | 70% | 85% | 40% |
| 16 | 36% | 84% | 68% | 68% | 84% | 36% |
| 17 | 32% | 83% | 66% | 66% | 83% | 32% |
| 18 | 28% | 82% | 64% | 64% | 82% | 28% |
| 19 | 25% | 81% | 62% | 62% | 81% | 25% |
| 20 | 25% | 80% | 60% | 60% | 80% | 25% |
| 21 | 25% | 79% | 58% | 58% | 79% | 25% |
| 22 | 25% | 78% | 56% | 56% | 78% | 25% |
| 23 | 25% | 77% | 54% | 54% | 77% | 25% |
| 24 | 25% | 76% | 52% | 52% | 76% | 25% |
| 25 | 25% | 75% | 50% | 50% | 75% | 25% |
| 26 | 25% | 74% | 48% | 48% | 74% | 25% |
| 27 | 25% | 73% | 46% | 46% | 73% | 25% |
| 28 | 25% | 72% | 44% | 44% | 72% | 25% |
| 29 | 25% | 71% | 42% | 42% | 71% | 25% |
| 30 or over | 25% | 70% | 40% | 40% | 70% | 25% |

**\*Payment Schedule is applied based on the roof year indicated on your Declarations Page.**

## DEFINITIONS

The following definition is added:

**"Roofing Materials"**

"Roofing Materials" means the roof surface material (composition shingle, slate, tile, wood, metal, all other roof surface material) and all other roofing components of a building or other structure covered under **Coverage A – Dwelling** or **Coverage B – Other Structures**. This includes but is not limited to:

a. Flashings, caps, vents, ridge vents, dripedges, scuppers and ice shields;

b. Sheathing, felt and membranes;

c. Shingles, tile, sheets or shakes (regardless of system materials);

d. Tar, tar paper, asphalt or gravel;

e. Modified bitumen, bitumen, rubber rolled-roofing, built-up or sprayed polyurethane foamroofing;

f. Foam inserts, insulation, underlayment and elastomeric coating;

g. Cupola, finials, and snow guards;

h. Battens, counter battens, bird stops, and gravel stops;

i. Light-transmitting structures, such as skylights, rooflights and roof windows; and

j. Coatings, adhesives, adherents and other finishing materials for "roofing materials".

## SECTION I – CONDITIONS

This endorsement modifies **Section I – CONDITIONS, D. Loss Settlement** in the policy form with respect to a covered loss for "roofing materials" caused by the peril of windstorm or hail. Such loss will be subject to actual cash value loss settlement, per the Roofing Materials Payment Schedule above. The calculation of actual cash value includes depreciation, as determined by us, to property, materials, labor, unit costs, associated costs, overhead, profit, taxes and fees.

Payment for a covered loss for "roofing materials" caused by the peril of windstorm or hail will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, relocation or demolition of building structures or other structures.

Coverage under this endorsement will not trigger, cause, or result in the application of any Additional Coverage for Ordinance or Law, if provided in this policy, regardless of whether any building code, ordinance or law applies.

The loss settlement conditions that pertain to "repair or replacement cost without deduction for depreciation" are changed as noted below:

**D. Loss Settlement**

Paragraph **1.c.** is replaced by the following:

c. Structures that are not buildings, including their "roofing materials";

The following is added to Paragraph **1.**:

e. "Roofing materials" on structures that are buildings if a loss to the "roofing materials" is caused by the peril of windstorm or hail.

In Paragraph **2.**, the introductory statement "Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:" is replaced by the following:

2. Buildings covered under Coverage A or B, except for their "roofing materials" if the loss to the "roofing materials" is caused by the peril of windstorm or hail, at replacement cost without deduction for depreciation, subject to the following:

The following is added to Paragraph **2.**:

    **f.**    In the event of a covered loss to "roofing materials", the applicable percentage in the Roof Surfaces Payment Schedule will be based on the dwelling roof  material and date of roof installation as previously provided by you and shown on your Declarations Page.

        You agree to promptly notify us each time the dwelling roof is replaced so that we may adjust our records. If you fail to notify us of the roof replacement:

        **i.**    Within 90 days after the replacement; or

        **ii.**    Before the end of the policy period in which the replacement occurred;

    whichever is greater, the applicable percentage in the Roof Surfaces Payment Schedule will be based on the dwelling roof material and date of installation as previously provided by you and shown on your Declarations Page.

All other provisions of this policy apply.

HOMEOWNERS
HO SW 01 09 07 21

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – FLORIDA

**AGREEMENT** is replaced by the following:

In reliance on the information you have given us, we agree to provide the insurance coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions and promptly inform us of any change of title, use or occupancy of the "residence premises".

This Policy does not include, does not insure, and we will not pay for, any "diminution in value", except under liability coverage in SECTION II – LIABILITY COVERAGES.

**DEFINITIONS**

The following definitions are added:

**"Catastrophic Ground Cover Collapse"**

"Catastrophic ground cover collapse" means geological activity that results in all of the following:

a. The abrupt collapse of the ground cover;

b. A depression in the ground cover clearly visible to the naked eye;

c. "Structural damage" of the "principal building" insured under this Policy, including the foundation; and

d. The "principal building" being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that "principal building".

"Catastrophic ground cover collapse" coverage does not apply to Coverage **B** structures.

**"Crops"**

Products that are grown from the soil or by hydroculture as food or for ingestion by an "insured". However, this does not include domestic gardening activities located on the "residence premises" which are grown, harvested, and serviced by an "insured" for household consumption only.

**"Diminution in Value"**

"Diminution in value" means any reduction in the value of any covered property as compared to the value of that property immediately before the loss.

**"Electronic Transmittal"**

"Electronic transmittal" (hereafter referred to as "electronically transmitted", "electronic transmittal", "electronically transmit" or "electronically transmitting") means:

a. The electronic transmittal of any document or notice to the designated Primary Email Address shown in your Declarations; or

b. The electronic posting of any document or notice, with notification to you of the posted document or notice, by electronic transmittal to the designated Primary Email Address shown in your Declarations.

**"Fungi"**

a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

b. Under Section **II,** this does not include any fungi that are in, are on, or are contained in a good or product intended for consumption.

**"Hurricane Occurrence"**

A "hurricane occurrence" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service, with a duration that:

a. Begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

b. Continues for the time period during which the hurricane conditions exist anywhere in Florida; and

c. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**"Primary Structural Member"**

"Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**"Primary Structural System"**

"Primary structural system" means an assemblage of "primary structural members".

**"Principal Building"**

In Forms **HO 00 02, HO 00 03, HO 00 04** and **HO 00 05:**

"Principal building" means the dwelling where you reside on the "residence premises" shown in the Declarations, including structures attached to the dwelling. "Principal building" does not include any other buildings or structures at that location.

In Form **HO 00 06:**

"Principal building" means the unit where you reside shown as the "residence premises" in the Declarations. "Principal building" does not include any other buildings or structures at that location.

**"Supplemental Claim" or "Reopened Claim"**

"Supplemental Claim" or "Reopened Claim" means any additional claim for recovery from us for any loss we previously adjusted pursuant to an initial claim.

**"Structural Damage"**

"Structural damage" means a "principal building", regardless of the date of its construction, has experienced the following:

    **a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement-related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

    **b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement-related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose or location;

    **c.** Damage that results in listing, leaning or buckling of the exterior load-bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

    **d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

    **e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**"Unoccupied"**

"Unoccupied" means the dwelling is not being inhabited as a residence.

**"Vacant"**

"Vacant" means the dwelling lacks the necessary amenities, adequate furnishings, or utilities and services to permit occupancy as a residence.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

Paragraph **2** is replaced by the following:

    **2.** We do not cover land or "crops", including land on which the dwelling is located.

### B. Coverage B – Other Structures

The following below **2.d** is added:

    **e. "**crops", including "crops" located in a structure on the "residence premises" described in the Declarations.

### A. Coverage A – Dwelling & B. Coverage B – Other Structures

The following is added:

**Special Limits of Liability**

Cosmetic and Aesthetic Damage to Floors. The total limit of liability for Coverages **A** and **B** combined is $10,000 per policy term for cosmetic and aesthetic damages to floors.

1. Cosmetic or aesthetic damage includes, but is not limited to, chips, scratches, dents or any other damage to less than 5% of the total floor surface area and does not prevent typical use of the floor.

2. This limit includes the cost of tearing out and replacing any part of the building necessary to repair the damaged flooring.

3. This limit does not increase the Coverage **A** or Coverage **B** limits of liability shown on the declaration page.

4. This limit does not apply to cosmetic or aesthetic damage to floors caused by a **Peril Insured Against** as named and described for Coverage **C** – Personal Property.

(This is added under **COVERAGE A – Dwelling** in **Form HO 00 06** and applies only to Coverage A.)

Paragraph **E.10.k.(2)(d)** is deleted in Form **HO 00 05** and Endorsement **HO 06 65.**

## C. Coverage C – Personal Property

The following is added under **3. Special Limits Of Liability**:

> **l.** $500 is the maximum loss payable for covered property stored in freezers or refrigerators on the "residence premises". The following deductible applies to covered loss to refrigerated property: We will pay that part of the loss that exceeds $100.

## E. Additional Coverages

The following Additional Coverage is added:

**"Fungi", Wet Or Dry Rot, Or Bacteria**

a. We will pay up to $10,000 for:

(1) The total of all loss payable under Section **I** – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

(2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section **I** – Property Coverages;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

b. The coverage described in **a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

c. $10,000 is the most we will pay for the total of all loss or costs payable, including Loss of Use under this Additional Coverage regardless of the:

(1) Number of locations insured;

(2) Number of claims made; or

(3) Number of "insureds".

d. If there is covered loss or damage to covered property not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

(**Additional Coverages** is Paragraph **C.** in Form **HO 00 04** and Paragraph **D.** in Form **HO 00 06.**)

In Form **HO 00 06**:

Paragraph **D.7.a.** is replaced by the following:

## D.  Additional Coverages

### 7.  Loss Assessment

**a.**  We will pay up to $2,000 per occurrence for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this Policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

**(1)**  Earthquake; or

**(2)**  Land shock waves or tremors before, during or after a volcanic eruption.

However, the maximum amount of loss assessment coverage for any one property loss, regardless of the number of assessments, shall be an amount equal to your unit-owner's loss assessment coverage limit in effect one day before the date of the occurrence. Any changes to the limits of your unit-owner's coverage for loss assessments made on or after the day before the date of the occurrence are not applicable to such loss.

A deductible amount, not to exceed the lesser of:

**(3)**  The deductible amount under this Policy equal to that which applies to the peril of fire; or

**(4)**  $250;

applies to loss covered under this Additional Coverage. We will pay only that part of the total of all loss payable under this Additional Coverage that exceeds that deductible amount. However, if a deductible was or will be applied to other property loss sustained by you resulting from the same direct loss, then no deductible applies to this coverage.

## SECTION I – PERILS INSURED AGAINST

In Forms **HO 00 02, HO 00 04** and **HO 00 06:**

### 12. Accidental Discharge Or Overflow Of Water Or Steam

Paragraph **b.(5)** in Forms **HO 00 02** and **HO 00 06** (**b.(4)** in Form **HO 00 04**) is replaced by the following:

**(5)**  To a building caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 03:**

## A.  Coverage A – Dwelling And Coverage B – Other Structures

Paragraph **2.c.(5)** is replaced by the following:

**(5)**  Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is replaced by the following:

**(c)**  Smog, rust or other corrosion;

Paragraph **2.c.(6)(g)** is replaced by the following: Birds, vermin, rodents, marsupials, animals, reptiles, fish, insects, or pests, including but not limited to, termites, snails, raccoons, opossums, armadillos, flies, bed bugs, lice, ticks, locust, cockroaches, and fleas.

Paragraph **2.c.(6)(j)** is added:

**(j)**  Pressure from or presence of tree, shrub or plant roots, unless a direct physical loss by a Peril Insured Against ensues and then we will pay only for the ensuing loss.

Paragraph **2.c.(6)(k)** is added:

**(k)**  Rain, snow, sleet, sand or dust to the interior of a building unless a covered peril first damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

## B.  Coverage C – Personal Property

### 12.  Accidental Discharge Or Overflow Of Water Or Steam

Paragraph **b.(4)** is replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **b.(5)** is added:

**(5)** Caused by the pressure from or presence of tree, shrub, or plant roots, unless a direct physical loss by a Peril Insured Against ensues and then we will pay only for the ensuing loss.

For Coverage **C,** the following peril is added:

**17. "Catastrophic Ground Cover Collapse"**

In Form **HO 00 05:**

Under Coverages **A, B** and **C:**

Paragraph **2.d.** is replaced by the following:

**d.** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is replaced by the following:

**(3)** Smog, rust or other corrosion;

In Forms **HO 00 02, HO 00 04** and **HO 00 06,** the following peril is added:

**17. "Catastrophic Ground Cover Collapse"**

**SECTION I – EXCLUSIONS**

Paragraph **2.** is replaced by the following:

**2. Earth Movement**

Earth movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement, including earth sinking, rising or shifting.

This Exclusion **2.** applies regardless of whether any of the above, in **2.a.** through **2.d.,** is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in **2.a.** through **2.d.,** is covered.

This Exclusion **2.** does not apply to loss by "Catastrophic ground cover collapse".

(This is Exclusion **A.2.** in Forms **HO 00 03** and **HO 00 05.**)

The following exclusion is added:

**"Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria, meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

**a.** When "fungi", wet or dry rot, or bacteria result from fire or lightning; or

**b.** To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section **I** – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

The following exclusion, below A.9 is added:

10. Loss or damage caused by hurricane to awnings, aluminum framed screened enclosures, or aluminum framed carports.

The following exclusion, below A.10 is added:

**11. Criminal Activity**

This means any and all criminal acts performed by any insured that result in damage to your structure or personal property.

The following exclusion, below A.11 is added:

**12. Existing Damage**

Damage which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or claims for damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to policy inception. However, any ensuing loss arising out of workmanship, repairs or lack of repairs, caused by a Peril Insured Against, to property described under Section I – Property Coverages, is covered unless the loss is otherwise excluded in this policy.

This Exclusion does not apply in the event of a total loss caused by a Peril Insured Against.

The following exclusion, below A.12 is added:

**13. Home Sharing/Bed and Breakfast**

Losses on homes or Condos or any part thereof, arising out of participation in a home sharing or bed and breakfast program, such as Airbnb, Flipkey, HomeAway where homes/condos are rented for days, weeks, or months.

The following exclusion, below A.13 is added:

**14. Change in Occupancy or Usage of "Residence Premises"**

If the company has not been notified by you within sixty (60) days of any change of ownership, title, use or owner occupancy of the "residence premises", including:

  **a.** The rental of the "residence premises";

  **b.** Vacancy or abandonment of the "residence premises";

  **c.** The use of the "residence premises" for any purpose other than a residential unit;

  any loss occurring from the 61st day after such change to the date proper notice is given will be excluded from coverage. If this occurs, premium would be refunded for the period during which the coverage is suspended.

The following exclusion, below A.14 is added:

**15. Loss Caused by "Sinkhole"**

"Sinkhole" means:

  **a.** A landform created by subsidence of soils, sediment, or rock as underlying strata are dissolved by groundwater.

  **b.** A "sinkhole" forms by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.

This exclusion does not apply to the peril of "Catastrophic Ground Collapse Cover".

The following exclusion, below A.15 is added:

**16. Accidental discharge or overflow of water or steam** from:

  **a.** Within a plumbing, heating, air conditioning or automatic fire protective sprinkler system;

  **b.** Within a household appliance for heating water; or

  **c.** Within a household appliance.

  This exclusion applies only while the dwelling is "vacant" or "unoccupied" for more than thirty

  (30) consecutive days or being constructed; unless you have used reasonable care to:

   **1.** Shut off the water supply; and

   **2.** Drain the system and appliances of water.

   Systems and appliances of water do not include outdoor swimming spas or outdoor irrigation wells.

**SECTION I – CONDITIONS**

**C. Duties After Loss**

Paragraph **1.** is replaced by the following:

  **1.** Give prompt notice to us or our agent, except that a claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm is barred unless notice of the claim, supplemental claim or reopened claim is given to us in accordance with the terms of this Policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.)

  This provision concerning time for submission of a claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this Policy under the Suit Against Us Condition, including any amendment to that condition.

Paragraph **7.** is replaced by the following:

  **7.** As often as we reasonably require:

   **a.** Show the damaged property to us or any other person acting on our behalf, to the degree reasonably possible;

    **b.** Provide us or any other person acting on our behalf with records and documents we or any other person acting on our behalf request and permit us or any other person acting on our behalf to make copies;

    **c.** You or any "insured" under this Policy must:

        **1.** Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

        **2.** Sign the same;

    **d.** If you are an association, corporation, or other entity; any members, officers, directors, partners or similar representatives of the association, corporation or other entity must:

        **1.** Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

        **2.** Sign the same;

    **e.** Your agents, your representatives, including any public adjusters engaged on your behalf, and anyone insured under this policy other than an "insured" in **c.** or **d.** above, must:

        **3.** Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

        **4.** Sign the same;

## D. Loss Settlement

In Forms **HO 00 02**, **HO 00 03** and **HO 00 05**:

Paragraph **2.d.** is replaced by the following:

    **d.** We will settle the loss as follows:

    **(1)** If the Mobilehome Endorsement is not made a part of this Policy, we will settle the loss as noted in **2.a.** of this provision. If **2.a.** is not applicable, we will settle the loss as follows:

        **(a)** We will initially pay the actual cash value of the building damage, minus any applicable deductible.

        **(b)** We will then pay the necessary amounts actually spent to repair or replace the damaged building as work is performed and expenses are incurred.

        **(c)** If a total loss, we will pay the replacement cost amount without deduction for depreciation.

    **(2)** If the Mobilehome Endorsement is made a part of this Policy:

        **(a)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **2.b.** of this provision.

        However, if the cost to repair or replace the damage is both:

        **(i)** Less than 5% of the amount of insurance in this Policy on the building; and

        **(ii)** Less than $2,500;

        we will settle the loss as noted in **2.a.** and **2.b.** of this provision whether or not actual repair or replacement is complete.

        **(b)** You may disregard the replacement cost loss settlement provisions and make claim under this Policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

Paragraph **2.e.** is deleted.

In Form **HO 00 06**:

Paragraph **2.** is replaced by the following:

**2.** Coverage **A** – Dwelling, at the actual cost to repair or replace.

In this provision, the terms "repaired" and "replaced" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **D.10.** Ordinance Or Law under Section **I** – Property Coverages.

Paragraph **F. Appraisal** is replaced by the following:

## F. Mediation Or Appraisal

1. If either you or a third party who is an assignee of benefits under the Policy and we are engaged in a dispute regarding a claim under this Policy, either you, the third-party assignee or we may request a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. However, we are not required to participate in any mediation requested by a third-party assignee. The loss amount must be $500 or more, prior to application of the deductible, or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. If the dispute is mediated, the settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and you have not rescinded the settlement within three business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

   We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the total cost for that rescheduled conference. However, if we fail to appear at a mediation conference without good cause, we will pay the actual cash expenses you incur in attending the conference and also pay the total cost for the rescheduled conference.

2. If you and we fail to agree on the amount of loss, either party may demand an appraisal of the loss. In this event, each party will choose a competent, disinterested, and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. An umpire must be competent, disinterested, and impartial. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

In Form **HO 00 06:**

Paragraph **G. Other Insurance And Service Agreement** is replaced by the following:

## G. Other Insurance And Service Agreement

If a loss covered by this Policy is also covered by other insurance or a service agreement covering the same property, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

However, if a loss covered by this Policy is covered by other insurance covering the same property and such other insurance is excess insurance over the amount recoverable under any other policy covering the same property, we will pay only the proportion of the loss that the limit of liability that applies under this Policy bears to the total amount of such insurance covering the loss.

Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

Paragraph **H. Suit Against Us** is replaced by the following:

## H. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this Policy and the action is started within five years after the date of loss.

Paragraph **I. Our Option** is replaced by the following:

## I. Our Option

In Forms **HO 00 02, HO 00 03** and **HO 00 05:**

If at the time of loss:

1. The Mobilehome Endorsement is made a part of this Policy, and we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

2. The Mobilehome Endorsement is not made a part of this Policy and the damaged property is:

   a. Not insured for Replacement Cost Loss Settlement as outlined in Section **I** – Conditions, Loss Settlement, and we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

   b. Insured for Replacement Cost Loss Settlement as outlined in Section **I** – Conditions, Loss Settlement, we will pay the amount of loss as noted in Paragraph **D.2.d.(1)** of the Loss Settlement Provision.

3. The Personal Property Replacement Cost Loss Settlement – Florida endorsement is made a part of this Policy, we will pay the amount of loss as noted in Paragraph **C.** of that endorsement.

In Forms **HO 00 04** and **HO 00 06**:

If at the time of loss:

1. The Personal Property Replacement Cost Loss Settlement – Florida endorsement is not made a part of this Policy, and we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged personal property with material or property of like kind and quality.

2. The Personal Property Replacement Cost Loss Settlement – Florida endorsement is made a part of this Policy, we will pay the amount of loss as noted in Paragraph **C.** of that endorsement.

Paragraph **J. Loss Payment** is replaced by the following:

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the Policy or is legally entitled to receive payment. Loss will be payable upon the earliest of the following:

1. 20 days after we receive your proof of loss and reach written agreement with you;

2. 60 days after we receive your proof of loss and:

   **a.** There is an entry of a final judgment; or

   **b.** There is a filing of an appraisal award or a mediation settlement with us; or

3. If payment is not denied, within 90 days after we receive notice of an initial, reopened or supplemental claim. However, this provision **(J.3.)** does not apply if factors beyond our control reasonably prevent such payment.

Paragraph **R. Concealment Or Fraud** is replaced by the following:

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this Policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made material false statements;

relating to this insurance.

However, if this Policy has been in effect for more than 90 days, we may not deny a claim filed by you or an "insured" on the basis of credit information available in public records.

(This is Paragraph **Q.** in **HO 00 04.**)

## SECTION II – EXCLUSIONS

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph **8. Controlled Substances** is replaced in all forms and Endorsement **HO 24 73** by the following:

**8. Controlled Substances**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

(This is Exclusion **9.** in **HO 24 73.**)

## SECTION II – CONDITIONS

Paragraph **A. Limit Of Liability** is replaced by the following:

**A. Limit Of Liability**

1. Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Limit Of Liability for Coverage **E** as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

2. **Sublimit Of Liability**

   Subject to Paragraph **1.** above, our total liability under Coverage **E** for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000. This sublimit is within, but does not increase, the Coverage **E** limit of liability.

3. The limit of liability in **1.** above and sublimit in **2.** above apply regardless of the number of "insureds", claims made or persons injured.

4. Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Limit Of Liability for Coverage **F** as shown in the Declarations.

This condition does not apply with respect to damages arising out of "fungi", wet or dry rot, or bacteria when Endorsement **HO 03 34** is attached.

Paragraph **J. Concealment Or Fraud** is replaced by the following:

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made material false statements;

relating to this insurance.

However, if this Policy has been in effect for more than 90 days, we may not deny a claim filed by you or an "insured" on the basis of credit information available in public records.

**SECTIONS I AND II – CONDITIONS**

Paragraph **C. Cancellation** is replaced by the following:

**C. Cancellation**

**1.** You may cancel this Policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, we may cancel this Policy only for the following reasons, with respect to the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations. Proof of mailing or "electronic transmittal" will be sufficient proof of notice.

    **a.** When you have not paid the premium, we may cancel during this period by letting you know at least 10 days before the date cancellation takes effect.

    **b.** If:

        **(1)** There has been a material misstatement or fraud related to the claim;

        **(2)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

        **(3)** We have paid policy limits;

we may cancel during this period by letting you know at least 45 days before the date cancellation takes effect.

    **c.** We shall be entitled to collect any additional premium required to keep the Policy in effect during this period.

However, this provision **(C.2.c.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**3.** If the conditions described in Paragraph **C.2.** do not apply, we may cancel only for the following reasons:

    **a.** When this Policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

    **b.** We may also cancel this Policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, may be delivered to you or mailed to you at your mailing address shown in the Declarations.

Proof of mailing or "electronic transmittal" will be sufficient proof of notice.

        **(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

        **(2)** When this Policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

           **(a)** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

           **(b)** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

           **(c)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household.

Except as provided in Paragraphs **C.3.a.** and **C.3.b.(1)** of this provision, we will let you know of our action at least 20 days before the date cancellation takes effect.

**(3)** When this Policy has been in effect for more than 90 days, we may cancel:

**(a)** If there has been a material misstatement;

**(b)** If the risk has changed substantially since the Policy was issued;

**(c)** In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

**(d)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

**(e)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(f)** On the basis of a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**(4)** When this Policy has been in effect for more than 90 days, we may not cancel:

**(a)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household; or

**(b)** On the basis of credit information available in public records.

**(5)** If any of the reasons listed in Paragraphs **C.3.b.(3)(a)–(f)** apply, we will provide written notice at least 120 days before the date cancellation takes effect.

**4.** If the date of cancellation becomes effective during a "hurricane occurrence":

**a.** The date of cancellation will not become effective until the end of the "hurricane occurrence"; and

**b.** We shall be entitled to collect additional premium for the period beyond the original date of cancellation for which the Policy remains in effect.

However, this provision **(C.4.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**5.** We may cancel this Policy after giving at least 45 days' notice if the Florida Office of Insurance Regulation determines and approves of our plan that early cancellation of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition, lack of adequate reinsurance coverage for hurricane risk or other relevant factors.

**6.** When this Policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**7.** If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will refund it within 15 days after the date cancellation takes effect.

Paragraph **D. Nonrenewal** is replaced by the following:

**D. Nonrenewal**

**1.** We may elect not to renew this Policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal. Proof of mailing or "electronic transmittal" will be sufficient proof of notice.

**a.** If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, then, during the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", we may elect not to renew this Policy only if:

**(1)** You have not paid the renewal premium;

**(2)** There has been a material misstatement or fraud related to the claim;

**(3)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

**(4)** We have paid policy limits.

We may do so by letting you know at least 45 days before the expiration date of the Policy.

**b.** We shall be entitled to collect any additional premium required to keep the Policy in effect during this period.

However, this provision **(D.1.b.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**c.** If the conditions described in Paragraph **D.1.a.** do not apply, we may elect not to renew this Policy by providing written notice at least 120 days before the expiration date of this Policy.

**2.** We will not nonrenew this Policy:

**a.** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**b.** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property;

**c.** On the basis of filing of claims for loss caused by sinkhole damage, unless:

**(1)** The total of such property claim payments equals or exceeds the policy limits of the Policy in effect on the date of loss for property damage to the covered building(s); or

**(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based;

**d.** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household; or

**e.** On the basis of credit information available in public records.

**3.** If the date of nonrenewal becomes effective during a "hurricane occurrence":

**a.** The expiration date of this Policy will not become effective until the end of the "hurricane occurrence"; and

**b.** We shall be entitled to collect additional premium for the period the Policy remains in effect.

However, this provision **(D.3.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**4.** We may nonrenew this Policy after giving at least 45 days' notice if the Florida Office of Insurance Regulation determines and approves of our plan that early nonrenewal of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition, lack of adequate reinsurance coverage for hurricane risk or other relevant factors.

Paragraph **F. Subrogation** is replaced by the following:

**F. Subrogation**

It is agreed upon any payment we make to an "insured", we are automatically subrogated to all the rights of the "insured" to the extent of such payment and our rights are not dependent on whether that "insured" is fully compensated for their loss or is made whole. The application of a deductible under this policy will not prevent any "insured" from being considered fully compensated or made whole.

An "insured" may waive in writing before a loss all rights of recovery against any person, but may not do so after a loss. After a loss, the "insured" must:

**1.** Do nothing to prejudice our subrogation rights of recovery;

**2.** Cooperate with us with respect to our efforts to seek a subrogation recovery and execute and deliver any required instruments or papers to support our subrogation recovery efforts; and

**3.** Do whatever else is reasonably necessary to secure such rights for us.

We may require from the insured an assignment of all rights of recovery against any party for loss to the extent that payment therefor is made by us. If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Any lawsuit filed by us to pursue our rights of recovery may be brought in the name of the "insured".

If we make a payment under this policy and the "insured" to or for whom payment is made also recovers damages from another, that "insured" shall:

**1.** Hold in trust for us the proceeds of the recovery; and

  **2.** Reimburse us to the extent of our payment.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II – Additional Coverages.**

The following conditions are added:

**H. Renewal Notification**

If we elect to renew this Policy, we will let you know, in writing:

  **1.** Of our decision to renew this Policy; and

  **2.** The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this Policy. Proof of mailing or "electronic transmittal" will be sufficient proof of notice.

**I. Notification Regarding Access**

If we require access to an "insured" or claimant or to the insured property that is the subject of a claim, we must provide at least 48 hours' notice to you or the claimant, or your or the claimant's public adjuster or legal representative, before scheduling a meeting with you, the "insured" or the claimant prior to conducting an on-site inspection of the insured property. You or the claimant may deny access to the property if the notice has not been provided or may waive the 48-hour notice.

**J. Electronic Transmittal**

We may "electronically transmit" any document or notice to you. Proof of "electronic transmittal" is sufficient proof of notice.

**K. Salvage**

We have the option to take all or any part of the damaged or destroyed covered property upon replacement by us or payment of the agreed or appraised value.

We will notify you of our intent to exercise this option within 45 days after we receive your signed, sworn proof of loss. If no signed, sworn proof of loss is requested by us, we will notify you of our intent to exercise this option within 60 days after the date you report the loss to us. When we settle any loss caused by theft or disappearance, we have the right to obtain all or part of any property which may be recovered. An "insured" must do whatever is reasonably necessary to protect this right and inform us of any property recovered. We will inform you of our intent to exercise this right within 10 days of your notice of recovery to us. If we notify you of our intent to exercise this right, you must retain the damaged property for up to 60 days from the notification date.

All other provisions of this Policy apply.